**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NUVECTRA CORPORATION,[1] | § | Case No. 19-43090 |
| | § | |
| Debtor. | § | |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC**
**STAY, (IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Nuvectra Corporation (the "Debtor") pursuant to

sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy

Code") for entry of an interim order (this "Interim Order")  (i) authorizing the Debtor to use cash

collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"),

(ii) granting adequate protection to Oxford Finance LLC ("Oxford"), as collateral agent (in such

capacity, the "Collateral Agent"), for itself and for the lenders party to that certain Loan and

Security Agreement dated as of March 18, 2016 (as amended, the "Loan Agreement") among the

Collateral Agent, the lenders party thereto from time to time (the "Lenders"), including Oxford

in its capacity as a lender and Silicon Valley Bank ("SVB", and collectively with the Collateral

Agent and the Lenders, the "Secured Parties") and the Debtor, as borrower thereunder,

(iii) modifying the automatic stay, (iv) scheduling a final hearing (the "Final Hearing") on the

Motion and approving the form and manner of notice thereof, and (v) granting such other and

further relief as the Court deems just and equitable; the Court having reviewed the Motion and

the *Declaration of John Stuart in Support of Chapter 11 Petition and First Days* (the "Stuart

---

[1] The last four digits of the Debtor's federal tax identification number are: 3847. The location of the Debtor's principal place of business and the service address for the Debtor is: 5830 Granite Parkway, Suite 1100, Plano, TX 75024.

[2] Except as otherwise noted, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Declaration") filed contemporaneously with the Motion, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on November 18, 2019 (the "Interim Hearing"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtor consents to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, the estate, its creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given, under the circumstances, and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Petition Date.  On November 12, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas (the "Chapter 11 Case").

B.      Debtor in Possession.  The Debtor is continuing in the management and operation of its business and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

C.      Jurisdiction and Venue.  This Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over these proceedings and over the persons and property affected hereby. Venue for the

Chapter 11 Case is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding

pursuant to 28 U.S.C. § 157(b).

     D.    <u>Statutory Committee</u>.  As of the date hereof, the United States Trustee for the

Eastern District of Texas (the "<u>U.S. Trustee</u>") has not appointed an official committee of

unsecured creditors (a "<u>Creditors' Committee</u>") in the Chapter 11 Case pursuant to section 1102

of the Bankruptcy Code.

     E.    <u>Debtor's Stipulations</u>.  Subject to paragraph 17 of this Interim Order, the Debtor

admits, stipulates, and agrees that (collectively, the "<u>Debtor's Stipulations</u>"):

     1.    <u>Loans</u>.  On March 18, 2016, the Debtor and certain other "Borrowers" (as

defined in the Loan Agreement)[3] entered into the Loan Agreement, as amended from

time to time thereafter (together with all agreements, documents, and instruments

executed in connection therewith or in furtherance thereof, the "<u>Loan Documents</u>."), with

the Secured Parties. The Loan Agreement, as amended, provides for term loans in the

aggregate principal amount of $45 million comprised of (i) a $27.5 million Term Loan A

commitment, (ii) a $12.5 million Term Loan B commitment, and (iii) a $5 million Term

Loan C commitment (collectively, the "<u>Loans</u>"). The Loan Documents evidence and

govern the "Obligations" (as defined in the Loan Documents) of the Debtor for principal,

accrued and unpaid interest, fees, costs, expenses and all other amounts arising under the

Loan Documents.  All payments on account of Obligations received by the Collateral

Agent prior to the filing of this Chapter 11 Case were duly authorized by the Debtor and

were properly applied by the Collateral Agent to the Loans and any outstanding

Obligations thereunder.

---

[3] Algostim, LLC, PelviStim LLC, and NeuroNexus Technologies, Inc. were subsequently removed as "Borrowers" under the Loan Agreement.

2.    <u>Collateral</u>.   Pursuant to the Loan Documents,[4] and as security for all Obligations owing thereunder, the Debtor pledged and granted (a) security interests in favor of the Collateral Agent in all of Debtor's right, title, and interest in and to certain of its property (consistent with the terms of the Loan Documents, the "<u>Personal Property Collateral</u>"), including but not limited to:  (i) all goods, Accounts (including health-care receivables), Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles (except as noted below), commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts and other Collateral Accounts, all certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located and (ii) all Borrower's Books relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing; and (b) a first priority mortgage lien on the real property owned by the Debtor located at 10675 Naples St. NE, Blaine, Minnesota 55449 (the "<u>Mortgaged Premises</u>", and together with the Personal Property Collateral, the "<u>Prepetition Collateral</u>"). Notwithstanding the foregoing, the Prepetition Collateral does not include any Intellectual Property; provided, however, the Prepetition Collateral includes all Accounts and all proceeds of Intellectual Property. The Loan Documents provide that, if a judicial authority (including a U.S. Bankruptcy Court)

---

[4]  Capitalized terms used in this Section E(2) but not otherwise defined herein shall have the meanings ascribed to them in the applicable Loan Documents.

would hold that a security interest in the underlying Intellectual Property is necessary to have a security interest in such Accounts and such property that are proceeds of Intellectual Property, then the Prepetition Collateral shall automatically, and effective as of the Effective Date of the Loan Agreement, include the Intellectual Property to the extent necessary to permit perfection of Collateral Agent's security interest in such Accounts and such other property of Borrower that are proceeds of the Intellectual Property. Pursuant to the terms of a certain negative pledge arrangement with Collateral Agent and the Lenders, Borrower agreed not to encumber any of its Intellectual Property. Pursuant to Section 7.1 of the Loan Agreement, the Borrower agreed that it shall not, without the prior written consent of the Required Lenders thereunder, convey, sell, lease, transfer, assign, or otherwise dispose of (collectively, "Transfer"), or permit any of its Subsidiaries to Transfer, all or any part of its business or property, including the Intellectual Property, except for Transfers (a) of Inventory in the ordinary course of business; (b) of worn-out or obsolete Equipment; and (c) in connection with Permitted Liens, Permitted Investments and Permitted Licenses.

3.     Outstanding Obligations.  As of the Petition Date, the Debtor is liable for payment of all outstanding Obligations, and the outstanding Obligations shall be an allowed secured claim in an amount not less than $15,961,823.66, including all accrued and accruing interest, fees, expenses and other amounts owed to the Secured Parties under the Loan Documents.[5]

---

[5] The Debtor, the estate, the Collateral Agent, and the Lenders hereby reserve their respective rights and defenses with respect to whether the estate is obligated to pay certain fees, including the Prepayment Fee, the Final Payment, and any other fees that may now or hereafter become due to Collateral Agent or the Lenders pursuant to the Loan Documents.  Such fees shall not be payable by the Debtor or the estate until further order of the Court.

4.      <u>Validity and Perfection of Liens</u>.  Subject to footnote 5 below, the Debtor stipulates, acknowledges, and agrees that: (i) as of the Petition Date, the Collateral Agent's security interest in the Prepetition Collateral was valid, binding, enforceable, non-avoidable and properly perfected; (ii) the Loans and all Obligations under the Loan Documents constitute a legal, valid, binding, non-avoidable obligation of the Debtor; (iii) no portion of the Loans or the Loan Documents, including all Obligations thereunder, are subject to avoidance, re-characterization, disallowance, disgorgement, recovery or subordination under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtor and its estate do not have any claims, objections, challenges, and/or causes of action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Collateral Agent or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon or related to the Loans.

5.      <u>Default by the Debtor</u>.  The Debtor acknowledges and stipulates that the Debtor is in default of its debts and Obligations under the Loan Documents.

6.      <u>No Liability to Third Parties</u>. The Debtor acknowledges, stipulates, and agrees that in making its decision to permit the use of Cash Collateral or in taking any other actions related to this Interim Order, the Collateral Agent (i) shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar

6

Federal or state statute), and (ii) shall not owe any fiduciary duty to the Debtor, its estate, or its creditors. The Debtor further acknowledges, stipulates and agrees that the Collateral Agent's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership with the Debtor.

F.    <u>Adequate Protection</u>.    The Collateral Agent is entitled to receive adequate protection in respect of the Debtor's use of the Prepetition Collateral and any decline in the value thereof, resulting from the (a) use of the Cash Collateral, (b) use, sale, depreciation or other diminution in value of the Prepetition Collateral, or (c) imposition of the automatic stay under section 362(a) of the Bankruptcy Code (the amount of any such diminution being referred to hereinafter as the "<u>Adequate Protection Obligations</u>"). Pursuant to sections 361, 363, and 507(b), as adequate protection for the Adequate Protection Obligations, the Debtor has agreed to provide the Collateral Agent with: (i) the Adequate Protection Liens; (ii) the Adequate Protection Superpriority Claims; and (iii) the Interest Payments (each as defined below). The Collateral Agent objects to the use by the Debtor of the Cash Collateral, except on the terms and conditions set forth in this Interim Order.

G.    <u>Necessity of Relief Requested</u>.    The Debtor requires the use of Cash Collateral in order to finance its operations, absent which immediate and irreparable harm will result to the Debtor, its estate and creditors, and the prospects for a successful conclusion of the Chapter 11 Case.    Absent the use of Cash Collateral, it would be impossible for the Debtor to continue to operate its business, even for a limited period of time, and serious and irreparable harm to the Debtor, its estate and its creditors would occur. The Debtor does not have sufficient available sources of working capital and financing to continue to operate its business without the use of Cash Collateral. The relief requested in the Motion is, therefore, necessary to the preservation

and maintenance of the value of the Debtor's assets. The Collateral Agent and the Debtor have

negotiated at arms' length and in good faith regarding the Debtor's use of Cash Collateral to fund

the continued operations of the Debtor for the period through the Termination Declaration Date

(as defined below), all subject to the terms and conditions set forth in this Interim Order,

including the protection afforded an entity acting in "good faith" under section 363(m) of the

Bankruptcy Code. Based on the record presented to the Court at the Interim Hearing, the terms of

the proposed adequate protection arrangements and the use of the Cash Collateral are fair and

reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment

consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair

consideration. Entry of this Interim Order is in the best interests of the Debtor, its estate, and its

creditors.

      H.    <u>Final Hearing</u>.  At the Final Hearing, notice of which will be provided in

accordance with this Interim Order, the Debtor will seek final approval of the relief requested in

the Motion for the proposed use of Cash Collateral on a final basis pursuant to a final order (the

"<u>Final Order</u>").

      I.    <u>Notice</u>.  Notice of the Interim Hearing and emergency relief requested in the

Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand

delivery, to (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the

Debtor; (c) the United States Attorney's Office for the Eastern District of Texas; (d) the Internal

Revenue Service; (e) counsel to the prepetition lenders Oxford Finance LLC and Silicon Valley

Bank; (f) the state attorneys general for states in which the Debtor conducts business; (g) the

Securities and Exchange Commission; (h) the applicable taxing authorities; and (i) any party that

has requested notice pursuant to Bankruptcy Rule 2002.  The parties have made reasonable

efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED, and the Debtor's use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.    <u>Objections Overruled</u>.  All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

3.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms of this Interim Order, pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtor is authorized to use Cash Collateral for the period (the "<u>Subject Period</u>") from the Petition Date through the date which is the earliest to occur of (a) December 31, 2019 or (b) the date that is five (5) calendar days following a Termination Declaration Date, strictly pursuant to and in accordance with the Budget attached hereto as **<u>Exhibit A</u>** (the "<u>Budget</u>"). Upon the date of the expiration of the Subject Period, Debtor's authority to use Cash Collateral shall cease absent further Order of this Court.

4.    <u>Budget Maintenance</u>.  Except as otherwise expressly set forth herein, the Budget may be amended or modified in writing from time to time only with the written consent of the Collateral Agent in its sole discretion, and any modifications to, or extensions, amendments or updates of, the Budget shall be in form and substance acceptable to and approved in writing by Collateral Agent in its sole discretion. The Debtor is authorized to use Cash Collateral subject to and in accordance with the Budget, provided, however, that during the four-week period beginning on the Petition Date and ending on December 12, 2019, the aggregate disbursements shall not exceed the aggregate amount contemplated by the Budget for such time period by more

than 7.5%. The Debtor shall submit a revised Budget on December 12, 2019 and at the end of

each four-week period thereafter, and such revised Budget shall be deemed to be acceptable to

the Collateral Agent provided that the aggregate disbursements in the revised Budget do not

exceed 107.5% of the aggregate disbursements in the Budget attached hereto as **Exhibit A**. The

Debtor shall deliver to the Collateral Agent on or before the close of business on Thursday of

each week (and if such day is not a business day, then the next succeeding business day) the

following: (a) comparison for the prior week of actual results of all items contained in the Budget

to the amounts originally contained in the Budget and (b) cumulative comparison for the period

from the Petition Date through the end of the prior week of the actual results of all items

contained in the Budget to the amounts originally contained in the Budget, in each case along

with such supporting information and additional reporting as the Collateral Agent may request.

The Debtor and its professionals, consultants, and other advisors shall be available weekly

(subject to reasonable scheduling conflicts) for a telephonic conference call with the Collateral

Agent and/or its professionals to discuss the status of the Chapter 11 Case, the results of

operations and other matters pertaining to the Debtor, including any sale or restructuring efforts.

The Collateral Agent shall have independent access to the Debtor's financial advisors to discuss

matters relating to the Debtor, including any contemplated sale or restructuring of the Debtor.

   5. <u>Adequate Protection Liens</u>.  As adequate protection against any diminution in

value of the Collateral Agent's interest in the Prepetition Collateral, the Collateral Agent is

hereby granted (effective and perfected as of the Petition Date and without the necessity of the

execution by the Debtor of mortgages, security agreements, pledge agreements, financing

statements or other agreements) a valid and perfected security interest in, and lien on (the

"<u>Adequate Protection Liens</u>"), all of the right, title and interest of the Debtor in, to, and under all

present and after-acquired property and assets of the Debtor of any nature whatsoever, whether real or personal, tangible or intangible, wherever located, including, without limitation, all cash and Cash Collateral of the Debtor (whether maintained with the Collateral Agent, SVB, or any other financial institution) and any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes of action, general intangibles, accounts receivable, and other rights to payment, whether arising before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds, real properties, including the Mortgaged Premises, plants, machinery, equipment, patents, copyrights, trademarks, trade names or other intellectual property, licenses, insurance proceeds, and commercial tort claims, and all proceeds, products, offspring, rents and profits thereof, including proceeds of causes of action under Chapter 5 of the Bankruptcy Code, rights under letters of credit, capital stock and other equity or ownership interests held by the Debtor, including equity interests in subsidiaries and all other investment property, and the proceeds of all of the foregoing, whether now existing or hereafter acquired (collectively, the "Collateral"); provided, however, that any lien on proceeds of causes of action under Chapter 5 of the Bankruptcy Code shall be subject to entry of the Final Order. Subject to the Carve-Out (as defined below), the Adequate Protection Liens shall be (i) first priority perfected liens on all of the Collateral that is not otherwise encumbered by validly perfected, non-avoidable security interests or liens as of the Petition Date, (ii) first priority perfected replacement liens on all of the Collateral as to which the Collateral Agent had a first priority lien as of the Petition Date, subject to any Carve-Out, and (iii) junior perfected liens on all Collateral that is subject to a validly perfected lien with priority over the Collateral Agent's liens as of the Petition Date, if any.

6.      <u>Priority of Adequate Protection Liens</u>.  The Adequate Protection Liens shall be enforceable against the Debtor, its estate, and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, a "<u>Successor Case</u>"). Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case or any Successor Case, or upon the dismissal of the Chapter 11 Case or Successor Case; provided, however, and for the avoidance of doubt, the Adequate Protection Liens shall not prime any validly perfected lien on any Collateral having priority over the Collateral Agent's liens as of the Petition Date. The Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

7.      <u>Adequate Protection Superpriority Claims</u>.  To the extent that the Adequate Protection Liens do not adequately protect against the diminution in the value of the Collateral Agent's interest in the Prepetition Collateral, as further adequate protection against any diminution in value of the interests of the Collateral Agent in the Prepetition Collateral, the Collateral Agent is hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code allowed superpriority administrative expenses claims in the Chapter 11 Case in the amount of the Adequate Protection Obligations (the "<u>Adequate Protection</u>

Superpriority Claim"), subject to any Carve-Out, which shall be payable from and have recourse to all Collateral and all proceeds of Collateral, including without limitation, proceeds of any causes of action under chapter 5 of the Bankruptcy Code; provided, however, that any payment on account of the Adequate Protection Superpriority Claim from proceeds of causes of action under Chapter 5 of the Bankruptcy Code shall be subject to entry of the Final Order.

8.    <u>Priority of Adequate Protection Superiority Claims</u>.    The Adequate Protection Superpriority Claims shall be junior only to the Carve-Out (as defined herein). Except for the Carve-Out, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code.

9.    <u>Modification of Automatic Stay</u>.    The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtor to perform such acts as the Collateral Agent may request in its sole discretion to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtor to pay, and the Collateral Agent to retain and apply, payments made in accordance with the terms of this Interim Order, <u>provided</u>, <u>however</u>, any stay relief with respect to the exercise of remedies shall be in accordance with Paragraph 15 or as otherwise ordered by the Court.

10.     <u>Perfection of Adequate Protection Liens</u>.  This Interim Order shall be sufficient

and conclusive evidence of the validity, perfection, and priority of the Adequate Protection

Liens, without the necessity of filing or recording any mortgage, financing statement or other

instrument or document which may otherwise be required under the law or regulation of any

jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into

any deposit account control agreement) to validate or perfect (in accordance with applicable non-

bankruptcy law) the Adequate Protection Liens, or to entitle the Collateral Agent to the priorities

granted herein. Notwithstanding the foregoing, the Debtor is authorized and directed to execute

and deliver promptly to the Collateral Agent all such financing statements, mortgages, notices

and other documents as the Collateral Agent may reasonably request, and the Collateral Agent

may file a photocopy of this Interim Order as a financing statement with any filing or recording

office or with any registry of deeds or similar office, in addition to or in lieu of such financing

statements, notices of lien or similar instruments.

11.     <u>Adequate Protection; Interest Payments</u>.  As additional adequate protection, the

Debtor shall make all monthly interest payments to the Collateral Agent in accordance with the

Budget and the Loan Documents (the "<u>Interest Payments</u>"); provided, however, any Interest

Payments made pursuant to this Interim Order shall be subject to claw-back by the estate if, and

solely to the extent that, (a) the Court enters a final order or judgement, which is not subject to

appeal, invalidating the Loans or the Prepetition Liens based upon a timely filed Challenge under

paragraph 17 of this Interim Order, and (b) the Court enters a final order or judgment, which is

not subject to appeal, directing the Collateral Agent to return such Interest Payments to the

estate.

12.     Fees and Expenses.  Subject to the provisions of this paragraph 12 of the Interim Order, the Debtor is hereby authorized and directed to pay all reasonable and documented postpetition fees and expenses of the Collateral Agent, including without limitation, fees and expenses of the Collateral Agent's attorneys, financial advisors, accountants, and other professional advisors. The Collateral Agent shall file all such documented fees and expenses, including any applicable invoices (which invoices may be redacted to protect any confidential and/or privileged information contained therein), with the Court and serve copies on (a) the Debtor, (b) the U.S. Trustee, (c) any Creditors' Committee appointed in the Chapter 11 Case, and (d) any other party that requests notice, each of whom shall have fourteen (14) days from the date of service to file a written objection to the fees and expenses sought by the Collateral Agent, which objection shall state with specificity the fees and expenses objected to and the grounds therefor. If no objection is timely filed, the Debtor shall immediately pay all such fees and expenses sought by the Collateral Agent. If an objection is timely filed, the Debtor shall immediately pay all non-objectionable fees and expenses, and the disputed portion shall only be paid pursuant to an order of the Court or as otherwise agreed to by the parties.

13.     Disposition of Collateral. To the extent that the Collateral Agent has a lien on any Collateral or Prepetition Collateral, or consent rights with respect to disposition of any of the Debtor's assets (including, but not limited to, Intellectual Property) under the Loan Documents, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any such Collateral or Prepetition Collateral without the prior written consent of the Collateral Agent.

14.     Events of Default. The occurrence of any of the following events, unless waived in writing by the Collateral Agent, shall constitute an event of default (an "Event of Default," and collectively, the "Events of Default"):

15

a.      the failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order;

b.      the filing by the Debtor of any debtor-in-possession financing pleadings or any documents pertaining to a debtor-in-possession financing not acceptable to and supported by the Collateral Agent in its sole discretion;

c.      the Debtor's obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest or other lien on all or any portion of the Collateral or the Prepetition Collateral which is equal or senior to any security interest or other lien of the Collateral Agent, or (ii) entitled to priority administrative status which is equal or senior to that granted to the Collateral Agent;

d.      any lien or security interest purported to be created under the Loan Documents shall cease to be, or shall be asserted by Debtor not to be, a valid and perfected lien on or security interest in any Collateral, with the priority required by the Loan Documents or herein;

e.      the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral having a value in excess of $75,000.00, or (ii) with respect to any lien on or the granting of any lien on any Collateral or Prepetition Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;

f.      reversal, vacatur, or modification (other than a modification with the express prior written consent of the Collateral Agent) of this Interim Order;

g.      dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a chapter 7 case, or appointment in the Chapter 11 Case of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

h.      any misrepresentation of a material fact made after the Petition Date by the Debtor or its agents to the Collateral Agent about the financial condition of the Debtor, the nature, extent, location or quality of any Collateral or Prepetition Collateral, or the disposition or use of any Collateral or Prepetition Collateral, including Cash Collateral;

i.      a default by the Debtor in reporting financial information as and when required under this Interim Order;

j.      the sale of any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the Collateral Agent, in its sole discretion, to the extent that the Collateral Agent has a lien on, or consent rights under the Loan Documents with respect to disposition of, any such assets being sold;

k.      if the Final Order, in form and substance acceptable to the Collateral Agent in its sole discretion, has not been entered by the Court on or before December 31, 2019;

l.      if the Debtor fails to timely meet the following case milestones on or before the dates to be agreed upon by the Collateral Agent and the Debtor in the Final Order:

(i)      the filing of a bidding procedures motion (the "Bidding Procedures Motion"), in form and substance acceptable to the Collateral Agent in its sole discretion, seeking approval of bidding procedures for the sale of substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code (the "Sale");

(ii)      entry of an order approving the Bidding Procedures Motion, in form and substance acceptable to the Collateral Agent in its sole discretion;

17

(iii)    entry of a final, nonappealable order approving the Sale, in form and substance acceptable to the Collateral Agent in its sole discretion;

(iv)    the filing of a plan under section 1121 of the Bankruptcy Code (the "Plan") and a disclosure statement in connection therewith (the "Disclosure Statement"), each in form and substance acceptable to the Collateral Agent in its sole discretion;

(v)    entry of an order approving the adequacy of the Disclosure Statement;

(vi)    entry of an order confirming the Plan; or

(vii)    occurrence of the effective date of the Plan;

m.    if the Debtor retains, or files an application requesting approval to retain, an investment banker that is not reasonably acceptable to the Collateral Agent;

n.    the failure to comply with the Budget in accordance with paragraphs 3, 4, and 18 of the Interim Order for any weekly reporting period;

o.    the failure to timely make any Interest Payment; or

p.    the filing by the Debtor of any motion seeking, or the granting of any motion providing for, reversal or modification of this Interim Order.

15.    Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default, the Collateral Agent may declare a termination, reduction, or restriction of the ability of the Debtor to use any Cash Collateral (any such declaration, shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by email or facsimile (or other electronic means) to counsel to the Debtor, counsel to any Creditors' Committee, if any, and the U.S. Trustee (the earliest date any

such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). Upon the passage of five (5) days from the Termination Declaration Date, (a) the Debtor's right to use Cash Collateral shall automatically cease unless the Debtor shall have cured such Event of Default in full prior to the expiration of such five-day period, including with respect to any Event of Default under paragraph 14(h) by correcting any such misrepresentation, and the Debtor shall no longer have the right to use or seek to use Cash Collateral; and (b) the automatic stay shall automatically be terminated without further notice or order, and the Collateral Agent shall be permitted to exercise all remedies set forth herein and in the Loan Documents, as applicable, and as otherwise available at law against the Collateral and the Prepetition Collateral, without further notice, order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Collateral and the Prepetition Collateral or any other rights and remedies granted to the Collateral Agent with respect thereto pursuant to the Loan Documents or this Interim Order, as applicable. During such five-day period, the Debtor and the Creditors' Committee, if any, shall have the right to seek a hearing solely for the purpose of seeking a determination of whether an Event of Default has occurred.

16.    Carve-Out. Subject to the terms and conditions contained in this paragraph, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subordinate to the following (collectively, the "Carve-Out"): (i) fees pursuant to 28 U.S.C. § 1930(a)(6), if any; (ii) fees payable to the clerk of the Bankruptcy Court and any agent thereof; and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all allowed, unpaid fees and expenses (not to exceed the amounts set forth in the

Budget up to, but not beyond, the Termination Declaration Date) incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Creditors Committee (should one be appointed in this Chapter 11 Case) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the Collateral Agent of a Termination Declaration, whether allowed by the Court prior to or after delivery of a Termination Declaration; and (iv) allowed fees and expenses of Professional Persons in an aggregate amount not to exceed $350,000 incurred after the first business day following delivery by the Collateral Agent of the Termination Declaration, to the extent allowed at any time, whether by interim order, procedural order, or otherwise.  Payment of any obligations within the Carve-Out shall not and shall not be deemed to reduce the Loans or the Adequate Protection Obligations and shall not and shall not be deemed to subordinate the Adequate Protection Liens or the Adequate Protection Superpriority Claims to any junior prepetition or postpetition lien, interest, or claim in favor of any other party. Nothing in this paragraph shall alter the requirements for Court approval and allowance of fees and expenses incurred by Professional Persons or the rights of the Debtor, the Collateral Agent or any other party-in-interest to object to the award of such requested fees and expenses.

17.    Lien Review Period.  Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection, and enforceability of the Collateral Agent's security interest in the Prepetition Collateral (the "Prepetition Liens"), and all acknowledgments, admissions, and confirmations of the Debtor in paragraph E of this Interim Order, are subject to the rights of any party in interest (including any trustee appointed or elected or Creditors'

Committee appointed in this Chapter 11 Case), other than the Debtor or any of its affiliates, to file a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate, or otherwise challenge (collectively, the "Challenges") the Loans or the Prepetition Liens; provided, however, that any such complaint must be filed in this Court by any party-in-interest (other than the Debtor or any of its affiliates), including any Creditors' Committee, if formed, within 60 calendar days from the entry of the Final Order, or any subsequent date that may be agreed to in writing by the Collateral Agent with respect to the time to file any such complaint relating to the Loans and/or the Prepetition Liens (the "Investigation Period"). If no such complaint is filed within the Investigation Period, then (a) all Challenges shall be, without further notice to or order of the Court, deemed to have been forever relinquished, released, and waived as to such Creditors' Committee and other person or entity and (b) the Debtor's Stipulations set forth in paragraph E of this Interim Order shall be fully binding on the Debtor, its estate, and all creditors and parties in interest. If such a complaint is timely filed within the Investigation Period, all claims and defenses against the Collateral Agent shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived as to such Creditors' Committee and other person or entity, except with respect to claims and defenses that are expressly asserted in such complaint.

18. <u>Limitations on the Cash Collateral and the Carve-Out</u>.

a. From and after the date of entry of this Interim Order, the proceeds of the Collateral and Cash Collateral shall not, directly or indirectly, be used to pay any expenses, payments, and/or disbursements of the Debtor or incurred by the Debtor except for those items which are then due, expressly permitted under the Budget or this Interim Order, and in such amounts as clearly identified in the Budget and/or this Interim Order (including compensation

and reimbursement of expenses allowed by this Court to Court-approved professional persons to the extent that such fees and expenses are in accordance with the line items for such professionals in the Budget).  In no event shall any costs or expenses of administration be imposed upon the Collateral Agent or any of the Collateral pursuant to sections 105(a), 506(c) and/or 552 of the Bankruptcy Code or otherwise without the prior written consent of the Collateral Agent, and no such consent shall be implied from any action, inaction, or acquiescence by the Collateral Agent; and

b.  Notwithstanding anything herein, Cash Collateral may only be used in accordance with the Budget and, in any event, the Cash Collateral and the Carve-Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type (i) against the Collateral Agent or any other Secured Party or seeking relief that would impair their rights and remedies under the Loan Documents or this Interim Order, including, without limitation, (A) to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any actions for lender liability against the Collateral Agent, any actions under section 105 of the Bankruptcy Code against the Collateral Agent, any actions under chapter 5 of the Bankruptcy Code against the Collateral Agent, or any actions under applicable, non-bankruptcy law or otherwise against the Collateral Agent, (B) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the rights and obligations of the Collateral Agent or seeking affirmative relief against the Collateral Agent, or (C) for the payment of any services rendered by the professionals retained by the Debtor or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceedings, application, motion, objection, defense or other contested

22

matter, the purpose of which is to seek, or the result of which would be to obtain, any order,

judgment determination, declaration or similar relief that would impair the ability of the

Collateral Agent to recover on the Loans, (ii) invalidating, setting aside, avoiding or

subordinating, in whole or in part, the Loans, (iii) for monetary, injunctive or other affirmative

relief against the Collateral Agent or its Collateral or Prepetition Collateral, or (iv) preventing,

hindering or otherwise delaying the exercise by the Collateral Agent of any rights and/or

remedies under this Interim Order, the Loan Documents, or applicable law, or the enforcement of

realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the

Collateral Agent upon any of the Collateral and the Prepetition Collateral; (b) to make any

distribution under a plan of reorganization in the Chapter 11 Case; (c) to make any payment in

settlement of any claim, action or proceeding, before any court, arbitrator or other governmental

body without prior written consent of the Collateral Agent, unless otherwise ordered by the

Court; (d) to pay any fees or similar amounts to any person who has proposed or may propose to

purchase interests in the Debtor without the prior written consent of the Collateral Agent, (e) to

object, contest, or interfere with in any way the enforcement or realization upon any of the

Collateral or the Prepetition Collateral by the Collateral Agent once an Event of Default has

occurred; (f) to sell or otherwise dispose of Collateral or the Prepetition Collateral without the

prior consent of the Collateral Agent; (g) to the extent such Cash Collateral represents insurance

proceeds constituting Collateral, without the prior consent of the Collateral Agent; (h) to pay

indebtedness outside the ordinary course of business without the prior written consent of the

Collateral Agent; (i) to incur any new indebtedness without the prior written consent of the

Collateral Agent; (j) to object to or challenge in any way the claims, liens, or interests (including

interests in the Collateral and the Prepetition Collateral) held by or on behalf of the Collateral

Agent; (k) to pay any costs or expenses that are not ordinary course operating expenses of the

Debtor; or (l) to modify or seek to modify the rights of the Collateral Agent under this Interim

Order; provided, however, that, the Cash Collateral in an amount not to exceed $25,000.00 in the

aggregate may be used by the Creditors' Committee for allowed fees and expenses incurred

solely by the Creditors' Committee, if one is appointed, to conduct the investigations set forth in

paragraph 17 of this Interim Order to investigate the validity, amount, extent, perfection, priority,

enforceability or avoidability of the Prepetition Liens, the Loan, and the Prepetition Collateral of

the Collateral Agent.

19.    No Third-Party Rights.   Except as explicitly provided for herein, this Interim

Order does not create any rights for the benefit of any third-party, creditor, equity holder or any

direct, indirect, or incidental beneficiary.

20.    Section 506(c) Claims.   Upon entry of the Final Order, no costs or expenses of

administration which have been or may be incurred in the Chapter 11 Case at any time shall be

charged against the Collateral Agent or any of its claims or the Collateral pursuant to sections

105 or 506(c) of the Bankruptcy Code, or otherwise.

21.    No Marshaling/Application of Proceeds.  Upon entry of the Final Order, the

Collateral Agent shall not be subject to the equitable doctrine of "marshaling" or any other

similar doctrine with respect to any of the Collateral or the Prepetition Collateral, as the case

may be, and proceeds shall be received and applied in accordance with this Interim Order

notwithstanding any other agreement or provision to the contrary.

22.    Section 552(b).  Upon entry of the Final Order, the Collateral Agent shall be

entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the

"equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to

the Collateral Agent with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

23.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Collateral Agent's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection; (b) any of the rights of the Collateral Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case or a Successor Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

24.    <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Collateral Agent hereunder is insufficient to compensate for any diminution in value of the Collateral Agent's interests in the Prepetition Collateral during the Chapter 11 Case or any Successor Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgement by the Collateral Agent, that the adequate protection granted herein does in fact adequately protect the Collateral Agent against any diminution in value of its interest in the Prepetition Collateral (including Cash Collateral).

25.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Collateral Agent to seek relief or otherwise exercise its rights and remedies under this Interim Order or applicable law, as

the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise of the Collateral Agent.

26.     <u>Proofs of Claim</u>.  The Collateral Agent will not be required to file a proof of claim in the Chapter 11 Case or a Successor Case for its claims to be allowed, and the Debtor's Stipulations shall be and are hereby deemed to constitute a timely filed proof of claim. Any order entered by the Court in relation to the establishment of a bar date for any claim (including, without limitation, administrative claims) in the Chapter 11 Case or a Successor Case shall not apply to the Collateral Agent.

27.     <u>Good Faith</u>.  The Collateral Agent has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith.

28.     <u>Access to Debtor</u>.   The Debtor shall permit representatives, agents and/or employees of the Collateral Agent, including professionals retained by the Collateral Agent's legal professionals, to have reasonable access to its premises and records during normal business hours and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

29.     <u>Binding Effect of Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the Collateral Agent, the U.S. Trustee, all other creditors of any of the Debtor, any committee appointed in the Chapter 11 Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the

Chapter 11 Case, any Successor Case, or upon dismissal of the Chapter 11 Case or a Successor

Case. In the event of any inconsistency between the provisions of this Interim Order and any

other order (including any "First Day" Pleadings and Orders relating thereto), the provisions of

this Interim Order shall govern and control. Any payments to be made under any order

(including any "First Day" order) shall only be made in accordance with this Interim Order and

the Budget.

30.     <u>No Modification of Interim Order</u>.  The Debtor irrevocably waives any right to

seek any amendment, modification or extension of this Interim Order without the prior written

consent of the Collateral Agent, and no such consent shall be implied by any other action,

inaction or acquiescence of the Collateral Agent. In the event any of the provisions of this

Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or

any other court, such modification, amendment, or vacatur shall not affect the validity,

perfection, priority, allowability, enforceability, or non-availability of any advances, payments,

or use of cash whether previously or hereunder, or lien, claim, or priority authorized or created

hereby. Any liens or claims granted to the Collateral Agent hereunder arising prior to the

effective date of any such modification, amendment, or vacatur of this Interim Order shall be

governed in all respects by the original provisions of this Interim Order, including entitlement to

all rights, remedies, privileges, and benefits granted herein.

31.     <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant

hereto shall survive entry of any order which may be entered: (a) confirming any plan of

liquidation or reorganization in the Chapter 11 Case; (b) converting the Chapter 11 Case to a

case under chapter 7 of the Bankruptcy Code; (c) dismissing the Chapter 11 Case or any

Successor Case; or (d) pursuant to which this Court abstains from hearing the Chapter 11 Case or

a Successor Case. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the Collateral Agent pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Case, in any Successor Case, or following dismissal of the Chapter 11 Case or any Successor Case, and shall maintain their priority as provided by this Interim Order until the Loans have been indefeasibly paid in full.

32.   <u>Final Hearing</u>.  A final hearing on the Motion is scheduled for December 30, 2019 at 10:00 a.m. (prevailing Central Time) before the Honorable Brenda T. Rhoades, United States Bankruptcy Court for the Eastern District of Texas.   On or before November 20, 2019, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with a copy of this Interim Order and the Motion on: (a) the parties having given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for any Creditors' Committee.  The Final Hearing Notice shall state that any party in interest objecting to the relief requested in the Motion on a final basis shall file written objections with the Clerk of the Court no later than December 16, 2019 at 5:00 p.m. (prevailing Central Time), which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtor, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, Texas 75201, Attn: Ryan Manns and Toby Gerber; (ii) counsel to the Collateral Agent, Greenberg Traurig LLP, 1000 Louisiana Street, Suite 1700, Houston, Texas 77002, Attn: Shari L. Heyen and David R. Eastlake, Esq.; (iii) counsel to any Creditors' Committee, if any; and (iv) the Office of the U.S. Trustee for the Eastern District of Texas, Bank of America Building, 110 North College Avenue, Room 300, Tyler, Texas 75702, Attn: Marc Salitore.

33.   <u>Retention of Jurisdiction</u>.   The Court has and will retain jurisdiction to enforce
this Interim Order according to its terms.

Signed on 11/20/2019

SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

Budget

**Nuvectra Corporation**
**13-Week Cash Flow Forecast**
*($ in thousands)*

| | WE 11-15 | WE 11-22 | WE 11-29 | WE 12-6 | WE 12-13 | WE 12-20 | WE 12-27 | WE 1-3 | WE 1-10 | WE 1-17 | WE 1-24 | WE 1-31 | WE 2-7 | WE 2-14 | WE 2-21 | WE 2-28 | WE 3-6 | WE 3-13 | WE 3-20 | WE 3-27 | WE 4-3 | WE 4-10 | WE 4-17 | WE 4-24 | WE 5-1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operational Cash Receipts | 686 | 641 | 604 | 652 | 620 | 583 | 562 | 534 | 534 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Cash Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Receipts** | 686 | 641 | 604 | 652 | 620 | 583 | 562 | 534 | 534 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| *Operating Cash Disbursements* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Supplier Payments | (2) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll & Benefits | - | (1,000) | - | - | - | (240) | - | - | - | (240) | - | (240) | - | - | (240) | (240) | - | - | (240) | - | (240) | - | (240) | - | - |
| Commission | - | (496) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Vehicle Expense | - | - | - | - | - | (40) | - | - | - | (40) | - | - | - | - | (40) | - | - | - | (40) | - | - | - | (40) | - | - |
| Occupancy | - | - | - | (58) | - | - | - | (58) | - | - | - | (58) | - | - | - | (58) | - | - | - | (58) | - | - | - | - | - |
| Insurance / D&O | - | (35) | (35) | - | - | - | (23) | - | - | - | (23) | - | - | - | (23) | - | - | - | (23) | - | - | - | - | (23) | - |
| Travel | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | (30) | - |
| Other | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | - |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Cash Disbursements** | (132) | (1,666) | (165) | (188) | (130) | (410) | (153) | (188) | (130) | (410) | (153) | (428) | (130) | (130) | (433) | (428) | (130) | (130) | (433) | (188) | (370) | (130) | (410) | (153) | - |
| **Operating Cash Flow** | $553 | ($1,025) | $439 | $465 | $490 | $173 | $409 | $346 | $404 | ($410) | ($153) | ($428) | ($130) | ($130) | ($433) | ($428) | ($130) | ($130) | ($433) | ($188) | ($370) | ($130) | ($410) | ($153) | ($544) |
| *Non-Operating Disbursements* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Restructuring Fees | (2,125) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Severance / PTO | - | - | - | - | - | - | - | (600) | - | - | - | (600) | - | - | - | (600) | - | - | - | (600) | - | - | - | (600) | (600) |
| **Total Non-Operating Cash Disbursements** | (2,125) | - | - | - | - | - | - | (600) | - | - | - | (600) | - | - | - | (600) | - | - | - | (600) | - | - | - | (600) | (600) |
| *Debt Service* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Interest | - | - | (218) | - | - | - | (161) | - | - | - | - | (161) | - | - | - | - | (161) | - | - | - | - | (161) | - | - | - |
| **Total Debt Service Disbursements** | - | - | (218) | - | - | - | (161) | - | - | - | - | (161) | - | - | - | - | (161) | - | - | - | - | (161) | - | - | - |
| **Total Disbursements** | ($2,257) | ($1,666) | ($384) | ($188) | ($130) | ($410) | ($314) | ($788) | ($130) | ($410) | ($153) | ($1,189) | ($130) | ($130) | ($433) | ($1,028) | ($291) | ($130) | ($433) | ($788) | ($370) | ($291) | ($410) | ($753) | - |
| **Net Cash Flow** | ($1,572) | ($1,025) | $221 | $465 | $490 | $173 | $248 | ($254) | $404 | ($410) | ($153) | ($1,189) | ($130) | ($130) | ($433) | ($1,028) | ($291) | ($130) | ($433) | ($788) | ($370) | ($291) | ($410) | ($753) | - |
| *Cash & Liquidity* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Cash | $43,659 | $7,088 | $6,062 | $6,283 | $6,748 | $7,238 | $7,411 | $7,658 | $7,405 | $7,808 | $7,398 | $7,245 | $6,056 | $5,926 | $5,796 | $5,363 | $4,335 | $4,043 | $3,913 | $3,480 | $2,693 | $2,322 | $2,031 | $1,620 | - |
| Change in Cash | ($1,572) | ($1,025) | $221 | $465 | $490 | $173 | $248 | ($254) | $404 | ($410) | ($153) | ($1,189) | ($130) | ($130) | ($433) | ($1,028) | ($291) | ($130) | ($433) | ($788) | ($370) | ($291) | ($410) | ($753) | - |
| Term Loan Draw / (Paydown) | ($35,000) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash** | $7,088 | $6,062 | $6,283 | $6,748 | $7,238 | $7,411 | $7,658 | $7,405 | $7,808 | $7,398 | $7,245 | $6,056 | $5,926 | $5,796 | $5,363 | $4,335 | $4,043 | $3,913 | $3,480 | $2,693 | $2,322 | $2,031 | $1,620 | $868 | - |
| *Term Loan Rollforward* | | | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Term Loan Draw / (Paydown) | $45,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | - |
| Draw / (Paydown) | ($35,000) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ending Term Loan Draw / (Paydown) | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | - |
| **Total Financing** | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | - |