Ryan E. Manns (TX Bar No. 24041391)
Toby L. Gerber (TX Bar No. 07813700)
Laura L. Smith (TX Bar No. 24066039)
Shivani P. Shah (TX Bar No. 24102710)
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas  75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

*Proposed Counsel for the Debtor and Debtor In Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| NUVECTRA CORPORATION,[1] | § | Case No. 19-43090 |
| | § | |
| Debtor. | § | |

## DEBTOR'S EXPEDITED MOTION FOR AN ORDER (I) APPROVING BID AND AUCTION PROCEDURES, INCLUDING STALKING HORSE PROTECTIONS; (II) AUTHORIZING AND SCHEDULING AN AUCTION FOR THE SALE OF ASSETS; (III) APPROVING THE SALE OF ASSETS; AND (IV) GRANTING RELATED RELIEF

Nuvectra Corporation (the "Debtor") files this *Expedited Motion for an Order (I) Approving Bid and Auction Procedures, Including Stalking Horse Protections; (II) Authorizing and Scheduling an Auction for the Sale of Assets; (III) Approving the Sale of Assets; and (IV) Granting Related Relief* (the "Motion").  In support of this Motion, the Debtor, by and through its undersigned counsel, respectfully represents as follows:

### RELIEF REQUESTED

1.      The Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"), (i) approving the proposed bidding procedures attached hereto as **Exhibit B** (the "Bidding Procedures") by which the Debtor will solicit offers

---

[1]The last four digits of the Debtor's federal tax identification number are: 3847. The location of the Debtor's principal place of business and the service address for the Debtor is: 5830 Granite Parkway, Suite 1100, Plano, TX 75024.

for the sale of its assets (the "Assets") in one or more transactions (collectively, the "Sale Transaction" or "Sale"); (ii) authorizing the Debtor to select one or more stalking horse bidders (each a "Stalking Horse Bidder"), if any, and the provision of Stalking Horse Protections (as defined below) without further notice or order from this Court; (iii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including approval of a notice of proposed cure amounts (the "Assumption and Assignment Procedures"); (iv) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto; (v) scheduling (a) an auction (the "Auction") and (b) a final hearing (the "Sale Hearing") to approve the Sale; and (vi) granting related relief. At the Sale Hearing, the Debtor may request that this Court enter an order (a "Sale Order"), the proposed form of which will be filed before the Sale Hearing: (i) authorizing the sale of the Assets free and clear of liens, claims, interests, and encumbrances; (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (iii) granting related relief.

## JURISDICTION AND VENUE

2.     The United States Bankruptcy Court for the Eastern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Standing Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* from the United States District Court for the Eastern District of Texa*s*, dated August 6, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue of the Chapter 11 Case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The legal bases for the relief requested herein are sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 6004 and 6006.

## BACKGROUND

5.      On November 12, 2019 (the "Petition Date"), the Debtor commenced this chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtor remains in possession of its assets and continues to operate and manage its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      A committee of unsecured creditors was appointed in this Chapter 11 Case on November 21, 2019 (the "Creditors' Committee").

8.      The factual background regarding the Debtor, including its business operations and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the *Declaration of John Stuart in Support of Chapter 11 Petitions and First Day Pleadings* (the "Stuart Declaration") [Dkt. No. 27], which was filed on November 14, 2019, and is fully incorporated herein by reference.

## PREPETITION AND POSTPETITION SALE PROCESS

9.      In August 2019, the Debtor publicly announced its intention to explore strategic alternatives. As part of this initiative, the Debtor hired Piper Jaffray & Co. ("Piper") as its exclusive financial advisor to explore the possibility of either a sale, merger, equity offering or other strategic transaction. Piper approached approximately forty-five (45) strategic and financial parties with respect to a sale or merger of the Debtor as a whole, or one or more sales of assets relative to its existing product, Algovita, or its product under development, Virtis.  Shortly after the Petition

Date, Piper informed the Debtor that it was unwilling to serve as the Debtor's sale advisor in the Chapter 11 Case.

10.      On November 26, 2019, after interviewing several qualified investment banking candidates, the Debtor retained Stout Risius Ross Advisors, LLC ("Stout"), subject to Court approval, to lead the Debtor's postpetition sale process for the Assets.  Since its retention, Stout has, among other things: (i) managed the Debtor's data room, providing access to multiple parties that have executed confidentiality agreements; (ii) identified approximately sixty (60) potential buyers, including strategic and financial parties that Piper previously approached; and (iii) has directly interfaced with multiple additional parties that have expressed interest in acquiring the Assets.

## **RELIEF REQUESTED**

11.      By this Motion, the Debtor requests, among other things, the entry of the Bidding Procedures Order, which will authorize and approve, among other things: (a)  the Bidding Procedures; (b) a potential Stalking Horse Bidder and Form Purchase Agreement (as defined herein); (c) the Assumption and Assignment Procedures; (d) the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto;[2] (e) the scheduling of the Auction (if any) and the Sale Hearing; and (f) granting related relief.  At the Sale Hearing, the Debtor will also request entry of the Sale Order that will approve the Sale.

---

[2]      To the extent that any of the deadlines set forth in this Motion do not comply with the *Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the Eastern District of Texas* (the "Local Rules"), the Debtor hereby requests a waiver of any such Local Rule.

**B.**     **The Proposed Bidding, Notice, and Assumption and Assignment Procedures**

　i.　Timeline for the Sale

12.　The Debtor proposes the following timeline for the Sale:

| Date | Event |
|---|---|
| Three days after entry of the Order | Deadline to serve Sale Notice |
| Three days after entry of the Order | Deadline to file Notice of Proposed Cure Costs |
| February 24, 2020 | Bid Deadline |
| February 27, 2020 | Auction |
| March 2, 2010 | File Notice of Sale |
| March 5, 2020 | Objection Deadline |
| March 11, 2020 | Reply Deadline |
| March 12, 2020 | Sale Hearing |
| March 19, 2020 | Closing |

The Debtor submits that this proposed timeline is reasonable, will foster robust participation in the sale process, is consistent with local practice and custom, and will not prejudice any parties-in-interest.

　ii.　Bidding Procedures

13.　The Bidding Procedures are designed to maximize value for the Debtor's estate while ensuring an orderly and efficient sale process.  The Bidding Procedures describe, among other things: (a) the procedures for interested parties to access due diligence materials, submit bids, and participate in the Auction; (b) the time, place, and process of the Auction; (c) the selection and approval of any ultimately successful bidder; and (d) the deadlines with respect to the foregoing. The Debtor believes that the Bidding Procedures provide for a sale process that will provide an opportunity to maximize the value of its estate and encourage robust participation in the bid process from all potential bidders.

14.　A summary of the principal terms of the Bidding Procedures is as follows:[3]

---

[3]     The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures. In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms

| | |
|---|---|
| **Assets to Be Sold** | The assets of, or interests in, the Debtor that may be purchased under section 363. |
| **Access to Diligence Materials** | To receive access to due diligence materials and to participate in the bidding process, an interested party must submit to the Debtor, or already be bound by, the following: (i) an executed confidentiality agreement and (ii) any other information that the Debtor reasonably requests. |
| | A party who, in the Debtor's reasonable business judgment, satisfies the requirements set forth in the immediately preceding sentence for receiving access to diligence materials shall be a "<u>Diligence Party</u>." As soon as practicable after the Debtor determines that a party is a Diligence Party, the Debtor will provide the Diligence Party access to the Debtor's confidential electronic data room and deliver a confidential management presentation. The Debtor will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline (as defined below). Notwithstanding the foregoing, the Debtor reserves the right to withhold any diligence materials that the Debtor determines are sensitive or otherwise inappropriate for disclosure to a Diligence Party whom the Debtor deems is a competitor of the Debtor or is affiliated with any competitor of the Debtor. Neither the Debtor nor its representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party. |
| **Qualification of Bidders and Qualified Bids** | To be eligible to participate in the Auction, each offer, solicitation, or proposal to acquire the Assets (each, a "<u>Bid</u>"), and each party submitting a Bid (each, a "<u>Bidder</u>") must satisfy each of the conditions set forth below, as determined by the Debtor, in consultation with the Consultation Parties (as defined below). In addition, the Debtor reserves the right to designate a reserve amount if there is no Stalking Horse Bidder. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions: |
| | (a) <u>Disclosure of Identity of Bidder</u>: Each Bid must fully disclose the identity of each person and entity that is the Bidder or an equity holder of the Bidder (or specifying that the Bidder is a public company) or otherwise participating in connection with such Bid (including any financial backer). |
| | (b) <u>Good Faith Deposit</u>: Each Bid must be accompanied by a deposit (a "<u>Good Faith Deposit</u>") submitted by wire transfer of immediately available funds to an account of the Debtor that is not subject to any liens or claims; *provided* that a Bidder may have its Good |

---

of the Bidding Procedures shall govern. Capitalized terms not defined in this summary shall have the meaning ascribed to them in the Bidding Procedures. A copy of the Bidding Procedures is attached hereto as **Exhibit B**.

Faith Deposit held in escrow pursuant to a prearranged escrow agreement that is reasonably acceptable to the Debtor. Each Good Faith Deposit must equal the amount of ten percent (10%) of the purchase price contained in the Modified Purchase Agreement (as defined below).

(c)    <u>Amount of Bid</u>:  In the event that the Debtor designates a Stalking Horse Bidder (as defined herein), each Bidder must submit a Bid with a purchase price that amounts to the Stalking Horse Bidder's purchase price plus the Break-Up Fee (as defined herein) plus the Minimum Overbid Increment (as defined herein). In the event that the Debtor does not designate a Stalking Horse Bidder in advance of the Bid Deadline, the Debtor, in consultation with the Consultation Parties, reserves the right to designate a reserve amount for purposes of qualifying a Bid.

(d)    <u>Bids for Portions of the Assets</u>:  A Bid may set forth an offer to purchase all or substantially all of the Assets, any portion of the Assets or any combination of the Assets.  In its reasonable business judgment the Debtor, in consultation with the Consultation Parties, may waive or modify, as appropriate, the application of the Qualified Bid conditions in respect of Bids for a portion of the Assets.

(e)    <u>Executed Agreement</u>:  Each Bid must be based on a form of a purchase agreement (with certain exhibits and schedules thereto, collectively, the "<u>Form Purchase Agreement</u>") and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (the "<u>Modified Purchase Agreement</u>").  Each Bid shall also include a copy of the Modified Purchase Agreement showing all changes requested by the Bidder to the Form Purchase Agreement and a form of the Sale Order (the "<u>Proposed Sale Order</u>").

(f)    <u>Designation of Assigned Contracts and Leases; Identification of Liabilities to Be Assumed; Payment of Cure Costs</u>: Each Bid must identify any and all executory contracts and unexpired leases (and any other liabilities) of the Debtor that the Bidder agrees to have assumed and assigned to it at closing, and the amount of the Bid must be sufficient to pay all cure amounts payable with respect to such contracts and leases under the Bankruptcy Code.

(g)    <u>Authority</u>:  Each Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate authorization, corporate or otherwise, to submit the Bid and consummate the proposed Sale. In addition, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to

the Debtor of approval of the submission of the Bid and consummation of the Sale by the equity holder(s) of such Bidder.

(h)     Proof of Financial Ability to Perform:  Each Bid must not be conditioned on obtaining financing and must include written evidence to allow the Debtor to reasonably conclude, in consultation with the Consultation Parties, that the Bidder has the necessary financial ability to (i) close the Sale on or before March 19, 2020 (the "Successful Bid Closing Deadline") and (ii) provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in such Sale, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.

(i)     Regulatory and Third-Party Approvals: Each Bid must (i) set forth each regulatory and third-party approval required for the Bidder to consummate the Sale and own and operate the Assets and perform under all contracts and leases to be assumed and assigned in such Sale, and (ii) confirm that the Bidder, including its owners and operators, could not be disqualified by any regulatory authority or third-party from owning and operating the Assets and performing under all contracts and leases to be assumed and assigned in such Sale.

(j)     Contingencies:  No Bid may be conditioned on obtaining financing or any internal authorizations, or on the outcome or review of due diligence of the Assets.

(k)     Irrevocable:  Each Bid must expressly provide that (i) the Bidder is prepared to consummate the Sale Transaction set forth in the Modified Purchase Agreement promptly following entry of the Sale Order and satisfaction of the closing conditions (if any) set forth in the Modified Purchase Agreement, and (ii) the offer reflected in such Bid shall remain open and irrevocable until the conclusion of the Auction, provided that if such Bid is accepted as the Successful Bid or the Backup Bid, such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" below.

(l)     Patient Clinical Care: Each Bid must specify the terms and conditions, if any, upon which the Bidder agrees to assume and perform, or provide for the performance of, ongoing clinical support for patients implanted with the Debtor's Algovita medical device on or prior to the Petition Date, including, but not limited to, personnel headcount, geographic service area, product replacement, warranty assumptions, and any terms and conditions limiting the expenses associated with the ongoing clinical support.

(m)    <u>As-is Where-is Basis</u>: Each Bid must expressly provide that the Assets are being purchased on an "as-is, where-is" basis and that such Bidder is not relying on any representation or warranty from the Debtor, its bankruptcy estate, or any other person or entity.

(n)    <u>Purchase Price Allocation</u>:  Each Bid must: (i) clearly state which Assets the Bidder is agreeing to purchase and which liabilities the Bidder is agreeing to assume and (ii) clearly set forth the purchase price to be paid, including and identifying separately any cash and non-cash components.

(o)    <u>Bid Deadline</u>:  Each Bid must be received by each of the following parties, in writing, on or before February 24, 2020 at 5:00 p.m. (prevailing Central Time) or such earlier date as may be designated by the Debtor (the "<u>Bid Deadline</u>"): (a) the Debtor, (i) Norton Rose Fulbright US LLP (Attn: Ryan Manns), 2200 Ross Avenue, Suite 3600, Dallas, Texas 75201-7932, ryan.manns@nortonrosefulbright.com, (ii) Dorsey & Whitney, LLP (Attn: Laura Kalesnik), 300 Crescent Court, Suite 400, Dallas, Texas 75201, kalesnik.laura@dorsey.com, (iii) Stout Risius Ross Advisors, LLC (Attn: Michael Krakovsky), 10100 Santa Monica Boulevard, Suite 1050, Los Angeles, California 90067, mkrakovsky@stout.com; (b) counsel for Oxford Finance LLC, (the "Collateral Agent," Greenberg Traurig, LLP (Attn: Shari Heyen and David Eastlake) 1000 Louisiana Street, Suite 1700, Houston, Texas 77002, heyens@gtlaw.com and eastlaked@gtlaw.com; and (c) counsel for the Official Committee of Unsecured Creditors (the "<u>Committee</u>," together with the Collateral Agent, the "<u>Consultation Parties</u>"), (i) Barnes & Thornburg LLP (Attn: Connie Lahn and Peter Clark), 225 South Sixth Street, Suite 2800, Minneapolis, Minnesota, connie.lahn@btlaw.com and peter.clark@btlaw.com, and (ii) Thompson & Knight LLP (Attn: Demetra Liggins), 811 Main Street, Suite 2500, Houston, Texas 77002, demetra.liggins@tklaw.com. A Bid received from a Bidder on or before the Bid Deadline that meets the requirements set forth above for the applicable Assets shall constitute a "<u>Qualified Bid</u>" for such Assets, and such Bidder shall constitute a "<u>Qualified Bidder</u>" for such Assets. Notwithstanding anything to the contrary in the Bidding Procedures, the Collateral Agent shall be deemed a Qualified Bidder and shall be entitled to credit bid at any Auction. The Debtor, in consultation with the Consultation Parties, may extend the Bid Deadline.

**Auction**          The Debtor will conduct the Auction to determine the highest or otherwise best Qualified Bid.[4]  If only one Qualified Bid is received with respect to all or a portion of the Assets, the Debtor may, in

---

[4] For the avoidance of doubt, a Stalking Horse Bid is a Qualified Bid.

consultation with the Consultation Parties, designate such Qualified Bid as a Successful Bid.  Only Qualified Bidders may participate in the Auction. If the Debtor does not receive any Qualified Bids, the Debtor, in consultation with the Consultation Parties, reserves the right to determine if the Debtor will conduct an Auction.

The Auction shall take place on February 27, 2020 at 10:00 a.m. (prevailing Central Time) at the offices of counsel for the Debtor, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, Texas 75201-7932, or such other place and time as determined by the Debtor.  The Auction shall be conducted according to the following procedures:

(a) Only the Debtor, the Consultation Parties, any Qualified Bidders, and/or other parties as the Debtor may determine to include in its discretion, in each case along with its representatives and advisors, shall be entitled to attend the Auction (such attendance must be in person) and only Qualified Bidders will be entitled to make any Overbids (as defined below) at the Auction.

(b) The Debtor and its advisors shall direct and preside over the Auction, which shall be transcribed.  Other than as expressly set forth in the Bidding Procedures, the Debtor, in consultation with the Consultation Parties, may conduct the Auction in the manner it determines will result in the highest or otherwise best offer for the Assets.  At the start of the Auction, each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of any of the Assets described in the Bidding Procedures, (b) it has reviewed, understands, and accepts the Bidding Procedures, (c) it has consented to the core jurisdiction of the Bankruptcy Court (as described more fully below), and (d) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

**Terms and Announcement and Consideration of Overbids**

An "Overbid" is any bid made at the Auction, in accordance with the requirements set forth in the Bidding Procedures.  To submit an Overbid, a Bidder must comply with the following conditions:

(a)  Minimum Overbid Increments:  The initial Overbid, if any, shall be not less than $100,000 (the "Minimum Overbid Increment"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment.  The Debtor, in consultation with the Consultation Parties, reserves the right to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction.

(b)      Remaining Terms are the Same as for Qualified Bids: Except as may be provided in the Bidding Procedures, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, *provided, however*, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, the Modified Purchase Agreement and a comparison to the Form Purchase Agreement. Any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Bidding Procedures and the conditions for a Qualified Bid.

(c)      Consideration of Overbids:   The Debtor reserves the right, in its reasonable business judgment and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with additional evidence as the Debtor may, in its reasonable business judgment and in consultation with the Consultation Parties, require in order to show that such Qualified Bidder has sufficient internal resources or non-contingent debt and/or equity funding commitments, to consummate the proposed Sale at the prevailing Overbid amount.

**Closing the Auction; Successful Bidder**

The Auction shall continue until there is only one Qualified Bid for such particular Assets that the Debtor determines in its reasonable business judgment and after consultation with the Consultation Parties, (i) is the highest or otherwise best Qualified Bid at the Auction and (ii) after considering all relevant factors and potential alternatives, is in the best interest of the Debtor's estate. Thereafter, the Debtor, in consultation with the Consultation Parties, shall select such Qualified Bid as the overall highest or otherwise best Qualified Bid with respect to such Assets (such Bid, the "Successful Bid," and the Bidder submitting such Successful Bid, the "Successful Bidder").

Unless it is not reasonably practicable, prior to the closing of the Auction, the Debtor and the Successful Bidder shall finalize definitive documentation to implement the terms of the Successful Bid and, to the extent applicable, cause such definitive documentation to be filed with the Court.

Promptly following the Debtor's selection of the Successful Bid and the conclusion of the Auction, the Debtor shall announce the Successful Bid and Successful Bidder and shall file with the Bankruptcy Court notice of the Successful Bid and Successful Bidder.

98876980.21

The Successful Bidder shall be required to keep the Successful Bid open and irrevocable until the closing of the Sale Transaction contemplated thereby.

**Closing with Alternative Backup Bidders**

Notwithstanding anything in the Bidding Procedures to the contrary, the Qualified Bid for any particular Assets that the Debtor determines in its reasonable business judgment and discretion, and in consultation with the Consultation Parties, is the next highest or otherwise best Qualified Bid at the Auction after the Successful Bid, will be designated as the "Backup Bid" and the Bidder submitting such Backup Bid, the "Backup Bidder."  The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of March 30, 2020 at 5:00 p.m. (prevailing Central Time) (the "Outside Backup Date") or the closing of the Sale Transaction with the Successful Bidder.

Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid on or before the Successful Bid Closing Deadline (or such sufficient deadline as the Debtor establishes), the Debtor may designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the Sale with the Backup Bidder without further order of the Bankruptcy Court.  In such case of a breach or failure to perform by a Successful Bidder, such Successful Bidder's Good Faith Deposit shall be forfeited automatically without further action by the Debtor.  The Debtor specifically reserves the right to seek all available damages and remedies, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

**Modification of Bidding and Auction Procedures**

The Debtor, for the purpose of maximizing value for its estate from the sale process, may modify the Bidding Procedures and implement additional procedural rules for conducting the Auction.  Specifically, among other things, the Debtor may determine to select more than one Successful Bid and more than one Successful Bidder (and/or more than one Backup Bid and more than one Backup Bidder, in which event such Backup Bids may provide for groupings of Assets that are different from the groupings of Assets reflected in the Successful Bid) for separate portions of the Assets.

iii.    Potential Stalking Horse Bidder

15.    The Debtor seeks authority, but not direction to select one or more Stalking Horse

Bidders in connection with the Auction. If a Stalking Horse Bidder is selected and subsequently

its Bid (the "Stalking Horse Bid") is terminated by the Debtor in order to accept a Successful Bid,

the Debtor seeks the Court's approval of (a) reimbursement of the Stalking Horse Bidder's reasonable out-of-pocket fees, costs, disbursements, and expenses incurred in connection with the Sale Transaction contemplated by its Bid through the date of such termination, subject to a cap of $250,000 (the "Expense Reimbursement") and (b) cash payment of a break-up fee (the "Break-Up Fee") in an amount equal to 3.0% of the cash purchase price set forth in the Stalking Horse Bid (the "Stalking Horse Protections"). The Stalking Horse Protections are a mandatory component of the Stalking Horse Bidder's Bid and, therefore, a necessary cost of preserving the value of the Debtor's estate. Accordingly, the Stalking Horse Protections are necessary to establish a "floor" for the sale of the Assets and ultimately to encourage competitive bidding and realization of the overall highest value, and otherwise best Qualified Bid, for the Assets. The Debtor's agreement to provide for Stalking Horse Protections may be made without further notice or order from this Court.

## C.    Proposed Notice Procedures

16.    The Debtor proposes the following notice procedures to be implemented in connection with the sale process.

### i.    Notice of Sale, Auction, and Sale Hearing

17.    Within three (3) business days after the entry of the Bidding Procedures Order or as soon as reasonably practicable thereafter (the "Mailing Date"), the Debtor shall serve a sale notice, substantially in the form attached hereto as **Exhibit C** (the "Sale Notice"), together with the Bidding Procedures Order, and the Bidding Procedures by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the Electronic Case Files ("ECF") system, by ECF, upon (a) all parties that have been identified by the Debtor in good faith prior to the entry of the Bidding Procedures Order as having the interest and ability to acquire all or part of the Assets; (b) all entities known to have asserted any liens, claims, interests, and encumbrances

in or upon any of the Assets; and (c) the U.S. Trustee; *provided, however*, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.

18.     In addition, within three (3) business days after the entry of the Bidding Procedures Order or as soon as reasonably practicable thereafter, the Debtor shall serve the Sale Notice by first-class mail, postage prepaid or, for those parties who have consented to receive notice by ECF upon (a) the United States Internal Revenue Service; (b) all parties filing a notice of appearance and requesting service the Chapter 11 Case; (c) all state and local taxing authorities in the states in which the Debtor has tax liabilities; (d) the United States Securities and Exchange Commission; (e) all counterparties to executory contracts and unexpired leases of the Debtor; (f) all state attorneys general in states in which the Debtor conducts business; and (g) all other parties on the Debtor's mailing matrix (including the Stalking Horse Bidder).  The Debtor requests that such notice be deemed sufficient and proper notice of the Sale with respect to known interested parties.

19.     Additionally, the Debtor will prepare and file a Form 8-K (affixing the Bidding Procedures and Bidding Procedures Order to the Form 8-K) with the United States Securities Exchange Commission to notify the Debtor's shareholders of the Debtor's sales process.

20.     Notice by mail to all parties potentially interested in purchasing the Assets or participating in the Auction is impracticable. As a result, pursuant to Bankruptcy Rules 2002 and 6004, the Debtor requests authority to publish a version of the Sale Notice modified for publication in a national publication selected by the Debtor and its advisors on one occasion as soon as reasonably practicable and will cause the Sale Notice to be posted on the Debtor's case information website at www.kccllc.net/nuvectra (the "Case Website").

    ii.     Date, Time, Place, and Notice of Auction

21.     The Auction, if any, shall take place on February 27, 2020 at 10:00 a.m. (prevailing Central Time) at the offices of counsel for the Debtor, Norton Rose Fulbright US LLP, 2200 Ross

Avenue, Suite 3600, Dallas, Texas 75201-7932, or such other place and time as determined by the Debtor.

     iii.    <u>Notice of Successful Bidder</u>

22.    As soon as reasonably practicable after the conclusion of the Auction, the Debtor shall post on the Case Website and file on the docket, but not serve, a notice identifying any Successful Bidder (the "<u>Post-Auction Notice</u>"), substantially in the form attached hereto as **<u>Exhibit D</u>**. Furthermore, the Debtor will also file a Form 8-K which will attach the Post-Auction Notice to notify its shareholders.

     iv.    <u>Date, Time, and Place of Sale Hearing</u>

23.    The Sale Hearing shall be conducted by the Court on March 12, 2020 at 10:00 a.m. (prevailing Central Time) or such other date as the Court is available and may, in accordance with the Bidding Procedures Order, be adjourned or rescheduled with notice.  At the Sale Hearing, the Debtor will seek Court approval of the Successful Bid and the Backup Bid (if any).  Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale.  In the event that the Successful Bidder cannot or refuses to consummate the Sale, the Debtor may designate the Backup Bidder as the new Successful Bidder and the Debtor shall be authorized, but not required, to consummate the Backup Bid with the Backup Bidder without further order of the Court. Without further order of the Court, in the event the Successful Bidder cannot or refuses to consummate the Sale through no fault of the Debtor, the Good Faith Deposit of the Successful Bidder shall be released automatically to the Debtor.

     v.    <u>Objection Deadline</u>

24.    All objections, if any, to the proceedings of the Auction, the Sale, the Successful Bidder's Modified Purchase Agreement, the Proposed Sale Order, the identity of the Successful Bidder and its ability to provide adequate assurance of future performance under section 365 of

the Bankruptcy Code, or entry of the Sale Order (collectively, the "Objections") must be filed by 5:00 p.m. (prevailing Central Time) on March 5, 2020 (the "Objection Deadline") and served on (a) the Debtor, (i) Norton Rose Fulbright US LLP (Attn: Ryan Manns), 2200 Ross Avenue, Suite 3600, Dallas, Texas 75201-7932, ryan.manns@nortonrosefulbright.com, (ii) Dorsey & Whitney, LLP (Attn: Laura Kalesnik), 300 Crescent Court, Suite 400, Dallas, Texas 75201, kalesnik.laura@dorsey.com, (iii) Stout Risius Ross Advisors, LLC (Attn: Michael Krakovsky), 10100 Santa Monica Boulevard, Suite 1050, Los Angeles, California 90067, mkrakovsky@stout.com; (b) counsel for Oxford Finance LLC, the Collateral Agent, Greenberg Traurig, LLP (Attn: Shari Heyen and David Eastlake) 1000 Louisiana Street, Suite 1700, Houston, Texas 77002, heyens@gtlaw.com and eastlaked@gtlaw.com; (c) counsel for the Official Committee of Unsecured Creditors, (i) Barnes & Thornburg LLP (Attn: Connie Lahn and Peter Clark), 225 South Sixth Street, Suite 2800, Minneapolis, Minnesota, connie.lahn@btlaw.com and peter.clark@btlaw.com, and (ii) Thompson & Knight LLP (Attn: Demetra Liggins), 811 Main Street, Suite 2500, Houston, Texas 77002, demetra.liggins@tklaw.com; and (d) the Office of the United States Trustee, U.S. Department of Justice (Attn: Marc Salitore), 110 N. College Avenue, Suite 300, Tyler, Texas 75702, marc.f.salitore@usdoj.gov (collectively, the "Objection Recipients").

25.     All replies to any Objections must be filed by 5:00 p.m. (prevailing Central Time) March 11, 2020 (the "Reply Deadline").

26.     Any party failing to timely file an Objection by the Objection Deadline will be forever barred from objecting and will be deemed to have consented to any Sale, including the transfer of the Debtor's right, title, and interest in, to, and under the Assets, free and clear of any and all Interests in accordance with a final purchase agreement for any Sale.

98876980.21

**D.    Assumption and Assignment Procedures**

27.    The Debtor proposes the procedures set forth below for notifying counterparties to executory contracts and unexpired leases of proposed cure amounts in the event the Debtor decides to assume and assign such contracts or leases.

ii.    <u>Notice of Proposed Cure Costs</u>

28.    Within three (3) business days after the entry of the Bidding Procedures Order or as soon as reasonably practicable thereafter (the "<u>Cure Cost Service Date</u>"), the Debtor shall file with the Court, and post on the Case Website, a notice, substantially in the form attached hereto as **<u>Exhibit E</u>** (the "<u>Notice of Proposed Cure Costs</u>"), and, included therewith, a list (collectively, the "<u>Contracts List</u>") that specifies (a) all of the Debtor's executory contracts and unexpired leases (the "<u>Contracts</u>") and (b) the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Contract (the "<u>Cure Costs</u>").[5]  If no Cure Cost is listed on the Contracts List for a Contract, the Debtor believes that there is no Cure Cost for such Contract, as of the date of such notice.

29.    The Debtor shall serve, via first class mail, the Notice of Proposed Cure Costs, without the Contracts List, which shall include (a) instructions regarding how to view the Contracts List on the Case Website (the "<u>Contract Instructions</u>"), (b) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of Contract(s) and rights thereunder, (c) Cure Costs, if any, and (d) the procedures for objecting thereto (clauses (b)–(d) collectively, the "<u>Necessary Notice Information</u>") on all named counterparties to the Contracts. The Debtor shall serve, via first class mail, a modified version of the Notice of Proposed Cure Costs that contains the Contract Instructions and Necessary Notice Information on all parties

---

[5]    The failure by the Debtor to list a contract on the Contract List shall not be deemed an admission by the Debtor that such contract is not executory and therefore not subject to assumption and assignment.

required by Bankruptcy Rule 2002.  Service as set forth herein shall be deemed proper, due, timely, good, and sufficient notice and no other or further notice is necessary.

30.    A counterparty to a Contract listed on the Notice of Proposed Cure Costs may file an objection (a "Cure Cost Objection") if such objection is to the proposed or lack of Cure Costs for such Contract.  All Cure Cost Objections must (a) state, with specificity, the legal and factual basis for the objection as well as what Cure Costs are required by the counterparty, if any, (b) include appropriate documentation in support thereof, and (c) be filed and served on the Objection Recipients no later than the Objection Deadline.

31.    If a counterparty to a Contract files a Cure Cost Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Sale Hearing, such later date that the Debtor determines in its discretion, or such other date determined by this Court.

iii.    Notice of Designated Contracts

32.    After the conclusion of the Auction, the Debtor shall post on the Case Website and file on the docket, but not serve, a list of the executory contracts and unexpired leases that the Successful Bidder and the Backup Bidder, if any, seek to have assumed and assigned (collectively, the "Designated Contracts").  If a counterparty to a Designated Contract objects to the assignment of a Designated Contract (other than on account of the amount of the proposed Cure Costs) or whether the Successful Bidder or the Backup Bidder, as the case may be, can provide adequate assurance of future performance, that counterparty must file an adequate assurance objection (the "Adequate Assurance Objections") on or before the Objection Deadline. If the Adequate Assurance Objections are not resolved prior to the Sale Hearing, such objections shall be

adjudicated at the Sale Hearing, such later date that the Debtor determines in its discretion, or such other date determined by this Court.

      iv.    <u>Additional Procedures</u>

33.     If the counterparty to a Designated Contract does not file a Cure Cost Objection or an Objection in a manner that is consistent with the requirements set forth above, such counterparty will be deemed to have consented to the assumption and assignment of the Designated Contract to a Successful Bidder or Back-Up Bidder, as the case may be, as an Acquired Contract (as defined below), notwithstanding any provision or other restriction on assumption or assignment in the Designated Contract or any other document, and shall be forever barred from asserting any objection with regard to such assumption and assignment.

34.     The inclusion of a Designated Contract on the Notice of Proposed Cure Costs shall not (a) obligate the Debtor to assume any Designated Contract listed thereon or the Successful Bidder or Backup Bidder, as the case may be, to take assignment of such Contract or (b) constitute any admission or agreement of the Debtor that such Contract is an executory contract or unexpired lease.  Only those Contracts that are included on a schedule of Acquired Contracts attached to the final purchase agreement with the final Successful Bidder (each, an "<u>Acquired Contract</u>") will be assumed and assigned to the Successful Bidder.

## ARGUMENT

**A.**    **Approval of the Sale Is Warranted under Bankruptcy Code Section 363(b).**

35.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Courts in this Circuit and others, in applying this section, have required that the sale of a debtor's assets be based upon the sound business judgment of the debtor.  *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc., et al. (In re Cont'l Air Lines, Inc.)*, 780

F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, LLC)*, 650 F.3d 593, 601 (5th Cir. 2011); *In re Cowin*, No. 13-30984, 2014 WL 1168714, at \*38 (Bankr. S.D. Tex. Mar. 21, 2014); *West v. Flores (In re St. Marie Clinic PA)*, No. 10-70802, 2013 WL 5221055, at \*9 (Bankr. S.D. Tex. Sept. 17, 2013); *In re Particle Drilling Techs., Inc.*, No. 09-33744, 2009 WL 2382030, at \*2 (Bankr. S.D. Tex. July 29, 2009); *In re San Jacinto Glass Indus., Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988).

36.     Once the Debtor articulates a valid business justification, the business judgment rule "is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985), rev'd on other grounds); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *Committee of Asbestos-related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (". . . a presumption of reasonableness attaches to a Debtor's management decisions.").

37.     The Debtor has sound business justifications for implementing a sales process for the sale of the Assets.  The Debtor does not have sufficient liquidity to remain in bankruptcy for an extended period of time and must sell the Assets.

38.     In the exercise of its business judgment, the Debtor has concluded that implementing a sale process on the terms set forth in the Bidding Procedures will provide the Debtor an opportunity to obtain the best offer for the Assets.  As discussed above, the Bidding

Procedures are appropriate under sections 105 and 363 of the Bankruptcy Code to ensure that the sales process is fair and reasonable and will yield the best offer for its estate and creditors. The currently proposed Bidding Procedures will establish parameters pursuant to which the value of the Assets may be fully tested at the Auction and ensuing Sale Hearing. Such procedures will increase the likelihood that the Debtor receives highest or otherwise best offer for the Assets because it will ensure a competitive and fair bidding process that will encourage participation by financially capable bidders who demonstrate the ability to consummate such a transaction.

39.     The Debtor has put limited (if any) constraints on the ability of prospective purchasers to bid on the Assets, and instead has encouraged bid flexibility by, *inter alia*, allowing the Debtor to consider all competing offers—including offers for all or some Assets—and to select, in its reasonable business judgment, the highest or otherwise best offer for the Assets. The Bidding Procedures also provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid. Further, the Debtor has instituted mechanisms to ensure an open and robust bidding process at the Auction.

40.     The Debtor believes that the sale process conducted in accordance with the Bidding Procedures will allow it to receive the highest or otherwise best offer for the Assets while preserving the Debtor's ability to seek confirmation of a plan to the extent that the sales process does not yield results.

41.     The Debtor also meets the additional requirements necessary to approve a sale under section 363 of the Bankruptcy Code. As stated herein, the Debtor will provide adequate notice of the Sale to interested parties, and the Debtor believes that the notice procedures described herein are reasonable and adequate under the circumstances. Additionally, the Debtor will enter into a purchase agreement only after a substantial and deliberate effort to market the Assets.

98876980.21

Accordingly, the Debtor submits that it is a valid exercise of its business judgment to seek the relief requested by this Motion.

42.     Accordingly, for all of the foregoing reasons, the Debtor believes that the Bidding Procedures (a) will encourage robust bidding for the Assets, (b) are consistent with other procedures previously approved by courts in this District, and (c) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and should be approved.

**B.     The Proposed Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Interests.**

43.     Section 363(f) of the Bankruptcy Code provides that a sale of encumbered property "free and clear of any interest" is permissible if "applicable non-bankruptcy law permits sale of such property free and clear of such interest," entities holding interests in the property consent to the sale, "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, such interest is in bona fide dispute, or such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

44.     Section 363(f) is drafted in the disjunctive.  As such, it is necessary to meet only one of these five conditions.  Because a Qualified Bid must be sufficient to satisfy the pre-bankruptcy secured claims (as well as any post-bankruptcy financing that the Debtor receives), the Debtor believes that it will be able to demonstrate at the Sale Hearing satisfaction of the requirements of section 363(f).  Additionally, the Debtor may sell the Assets free and clear of any other interests under section 363(f)(5) because the liens on any Assets sold will attach to the proceeds of such a sale and entities holding such interests could be compelled to accept money

satisfaction in legal or equitable proceedings. Accordingly, pursuant to section 363, the Debtor

may sell the Assets free and clear of all liens, claims, and encumbrances.

45.    A debtor should be authorized to sell assets out of the ordinary course of business

pursuant to Bankruptcy Code section 363 and prior to obtaining a confirmed plan or reorganization

if it demonstrates a sound business purpose for doing so. *See, e.g., Committee of Equity Security

Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *see also In re Gulf Oil

Corp.*, 404 B.R. 407 (Bankr. S.D. Tex. 2009). Factors considered in approving a sale outside of

plan include (i) the business justification, (ii) the amount of elapsed time since the filing date,

(iii) whether the proposed bid procedures facilitate competitive bidding, (iv) whether the assets

have been aggressively marketed, (v) the likelihood that a plan will be confirmed in the near future,

(vi) the effect of disposition on the future plan, and (vii) whether the assets are increasing or

decreasing in value. *Id.*

46.    The Debtor requests that the Court approve the sale of the Assets free and clear of

all liens, claims, and encumbrances. In evaluating such a sale, a court must balance the need for

flexibility with the concern of affected creditors. *In re Terrace Gardens Park P'ship*, 96 B.R. 707,

715 (Bankr. W.D. Tex. 1989). The Court must also determine that creditors' lien rights are

adequately protected and that the offered price is the highest price and/or best terms obtainable

under the circumstances in the particular case. *Id.*; *In re Beker Indus. Corp.*, 63 B.R. 474, 477–78

(Bankr. S.D.N.Y. 1986).

47.    The Debtor maintains that one of the five subsections of section 363(f) will be

satisfied and, therefore, the Debtor may sell the Assets free and clear of all liens, claims, and

encumbrances. Specifically, the Debtor submits that any such lien, claim, or encumbrance will be

adequately protected by attachment to the net proceeds of the sale, subject to any claims and

defenses the Debtor may possess with respect thereto and/or the Debtor will obtain the consent of the party holding the lien, claim or encumbrance. Accordingly, the Debtor requests that the Assets be sold to the Successful Bidder free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching to the proceeds of the sale of the Assets

**C.      Notice of the Auction and Sale Hearing Is Reasonable and Appropriate.**

48.      The Debtor submits that the Sale Notice as set forth above, along with any publication of the Sale Notice as described herein above on one occasion on the Mailing Date or as soon as reasonably practicable thereafter is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to bid on the Assets, and/or object to the proposed sale of the Assets.  Accordingly, the Debtor submits that the foregoing method of notice is reasonable under the circumstances.

**D.      Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.**

49.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Courts evaluate a decision to reject an executory contract or unexpired lease under the "business judgment" standard. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that the question whether a lease should be rejected is one of business judgment") (internal quotations omitted); *see also Lifemark Hospitals, Inc. v. Liljeberg Enters., Inc. (In re Liljeberg Enters., Inc.)*, 304 F.3d 410, 438 (5th Cir. 2002); *NLRB v. Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test.").

50.     The standard is satisfied if the debtor determines in its business judgment that the

rejection of the contract or lease would benefit the estate. *See In re Pisces Energy, LLC*, No. 09-

36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) (citing *Lubrizol Enters.,*

*Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046–47 (4th Cir. 1985)); *In re MPF*

*Holding U.S. LLS*, No. 08-36084, 2013 WL 3197658, at *9 (Bankr. S.D. Tex. June 21, 2013);

*Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36,

40 (3d Cir. 1989). The business judgment standard mandates that a court approve a trustee's

business decision unless the decision is the product of bad faith, whim or caprice. *In re Pisces*

*Energy*, 2009 WL 7227880, at *6; *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr. N.D.

Tex. 2009); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah

1981) (absent extraordinary circumstances, court approval of a debtor's decision to assume or

reject an executory contract "should be granted as a matter of course"). If the trustee's or debtor's

business judgment has been reasonably exercised, a court should approve the assumption or

rejection of an unexpired lease or executory contract. *See, e.g., Richmond Leasing*, 762 F.2d at

1309; *In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009), *aff'd*, 662 F.3d 315 (5th Cir.

2011) ("In the absence of a showing of bad faith or an abuse of business discretion, the debtor's

business judgment will not be altered").

51.     Rejection under section 365 of the Bankruptcy Code is intended to enable the debtor

to relieve its estate from burdensome and unprofitable contracts. *Stewart Title Guar. Co. v. Old*

*Republic Nat'l Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("[Section 365] allows a trustee to relieve

the bankruptcy estate of burdensome agreements which have not been completely performed")

(quoting *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)).

52.     To facilitate and effect the proposed Sale, the Debtor requests approval of the assumption and assignment of any Acquired Contracts to any Successful Bidder under section 365. The Debtor further requests that the Sale Order provide that the Acquired Contracts will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder, notwithstanding any provisions in the Acquired Contracts, including those described in sections 365(b)(2) and (f)(1) and (3) that prohibit such assignment.

53.     Any Successful Bidder must (a) submit evidence sufficient to demonstrate its financial wherewithal and ability to consummate the Sale, including the assumption of the Acquired Contracts at the closing of the Sale and (b) provide adequate assurance of future performance in connection with any assigned executory contracts and leases, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases.  Furthermore, to the extent that any defaults exist under any executory contract or unexpired lease that is to be assumed and assigned in connection with the sale of the Assets, the Successful Bidder will cure any such default prior to such assumption and assignment.

54.     The Debtor will present facts at the Sale Hearing to demonstrate the financial credibility, willingness, and ability of the Successful Bidder to perform under the Acquired Contracts.  The Sale Hearing thus will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Acquired Contracts, as required under section 365(b)(1)(C).  Further, as set forth above, the Debtor will give notice to all parties to the Acquired Contracts of its intention to assume the Acquired Contracts and what the Debtor believes are the Cure Costs.

55.     Accordingly, the Debtor submits that implementation of the proposed Assumption and Assignment Procedures is appropriate in these cases.  The Court therefore should have a

98876980.21

sufficient basis to authorize the Debtor to reject or assume and assign contracts as will be set forth in the Successful Bidder's purchase agreement.

**E.    Request for Relief Pursuant to Bankruptcy Rules 6004(h) and 6006(d)**

56.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.".

57.    The Debtor believes that any Sale should be consummated as soon as practicable to preserve and maximize value.  Accordingly, the Debtor requests that any Sale Order approving the sale of the Assets and the assumption and assignment of the Designated Contracts be effective immediately upon entry of such order and that the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

## RESERVATION OF RIGHTS

58.    Except as otherwise provided in the Form Purchase Agreement, the Bidding Procedures, or the Bidding Procedures Order, the Debtor further reserves the right, in its reasonable business judgment and in consultation with the Consultation Parties to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best offer and which is the next highest or otherwise best offer; (d) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) waive terms and conditions set forth in the Bidding Procedures with respect to all potential bidders; (f) continue or cancel the

98876980.21

Auction and/or Sale Hearing in open court, or by filing a notice on the docket of the Chapter 11 Case, without further notice; and (g) modify the Bidding Procedures and implement additional procedural rules for conducting the Auction so long as such modifications or rules are not inconsistent in any material respect with the Bankruptcy Code, the Bidding Procedures Order, or any other order of the Court.

## **NOTICE**

59.     The Debtor will provide notice of the Motion to: (a) the U.S. Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) the United States Attorney's Office for the Eastern District of Texas; (d) the Internal Revenue Service; (e) counsel to the prepetition lenders Oxford Finance LLC and Silicon Valley Bank; (f) counsel to the Official Committee of Unsecured Creditors; (g) the state attorneys general for states in which the Debtor conducts business; (h) the Securities and Exchange Commission; (i) the applicable taxing authorities; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  December 20, 2019

Respectfully Submitted**,**

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Ryan E. Manns*
Ryan E. Manns (Texas Bar No. 24041391)
Toby L. Gerber (Texas Bar No. 07813700)
Laura L. Smith (Texas Bar No. 24066039)
Shivani P. Shah (Texas Bar No. 24102710)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email:  ryan.manns@nortonrosefulbright.com
toby.gerber@nortonrosefulbright.com
laura.smith@nortonrosefulbright.com
      shivani.shah@nortonrosefulbright.com

*Proposed Counsel for the Debtor and Debtor in Possession*

98876980.21