Ryan E. Manns (TX Bar No. 24041391)
Toby L. Gerber (TX Bar No. 07813700)
Laura L. Smith (TX Bar No. 24066039)
Shivani P. Shah (TX Bar No. 24102710)
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas  75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

*Counsel for the Debtor and Debtor In Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| NUVECTRA CORPORATION,[1] | § | Case No. 19-43090 |
| | § | |
| Debtor. | § | **Hearing Date: Friday, March 6, 2020 at 10:00 a.m. (prevailing Central time)** |

## DECLARATION OF MICHAEL KRAKOVSKY IN SUPPORT OF SALE

Pursuant to 28 U.S.C. § 1746, I, Michael Krakovsky, being duly sworn, declare as follows:

1. I am a Managing Director and Head of Special Situations at Stout Risius Ross Advisors, LLC ("Stout").  Stout has been retained by the above-captioned debtor and debtor in possession (collectively, the "Debtor" or "Company") in the chapter 11 case (the "Chapter 11 Case"), which was filed on November 12, 2019.

2. I submit this declaration (the "Declaration") in support of the *Debtor's Expedited Motion for an Order (I) Approving Bid and Auction Procedures, Including Stalking Horse Protections; (II) Authorizing and Scheduling an Auction for the Sale of Assets; (III) Approving the*

---

[1] The last four digits of the Debtor's federal tax identification number are: 3847. The location of the Debtor's principal place of business and the service address for the Debtor is: 5830 Granite Parkway, Suite 1100, Plano, TX 75024.

*Sale of Assets; and (IV) Granting Related Relief* [Dkt. No. 110] (the "Bid Procedures Motion"),[2] which was filed on December 20, 2019.

3. Unless otherwise stated, all the facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents, or my opinion based on my experience, knowledge and information. I am familiar with the matters set forth herein and, if called as a witness, I could and would testify thereto.

**A.    The Sale Process**

   *a.    Postpetition Sale Efforts*

4. On November 26, 2019, the Debtor retained Stout to lead the Debtor's postpetition sale process. Since its retention, Stout has, among other things: (i) managed the Debtor's data room, providing access to multiple parties that have executed confidentiality agreements; (ii) identified approximately sixty (60) potential buyers, including strategic and financial parties (approximately 75% of the parties contacted were previously contacted by Piper Jaffray & Co. ("Piper") in the prior sale process and thus are familiar with the Debtor and its operations); and (iii) has directly interfaced with multiple additional parties that have expressed interest in acquiring the Debtor's Assets.

5. On January 13, 2020, the Court entered the *Order (I) Approving Bid and Auction Procedures, Including Stalking Horse Protections; (II) Authorizing and Scheduling an Auction for the Sale of Assets; (III) Approving the Sale of Assets; and (IV) Granting Related Relief* (the "Bid Procedures Order") [Dkt. No. 169].

6. Subsequent to the entry of the Bid Procedures Order, Stout provided interested parties with copies of the approved Bidding Procedures, notified them of the Bid Deadline of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Motion or the Bid Procedures Order, as applicable.

February 24, 2020, and invited them to continue to discuss the acquisition of the Assets either in the whole or in parts. Stout marketed the Company as a "going concern" and also separately marketed the intellectual property, fixed assets, inventory and real estate.

7. The Debtor's assets were extensively marketed both prepetition and postpetition. As such, I believe that the marketing process employed by the Debtor and its advisors resulted in a market-tested purchase price.

8. The Debtor and its advisors provided a draft of the APA to interested parties for submission with their Bids.

9. By the Bid Deadline, the Debtor had received a total of nine (9) Bids, and qualified six (6) of those Bids. Of the Qualified Bids: there were three (3) Bids which each sought some combination the Company's intellectual property and tangible assets; one (1) bid solely for the Debtor's intellectual property; and two (2) Bids from liquidators who sought to purchase the Company's fixed assets.[3]

    b.    *The Auction*

10. On February 27, 2020, the Debtor conducted an Auction pursuant to the Bidding Procedures at the Dallas office of Debtor's counsel, Norton Rose Fulbright US LLP. I attended the Auction. The Auction began at approximately 10:00 a.m. (Central Time) and concluded at approximately 8:00 p.m. (Central Time). A stenographer transcribed the Auction proceedings. In addition, meetings with all Qualified Bidders occurred before and throughout the Auction in an effort to harmonize disparate Bids and to promote the highest possible value outcome. Furthermore, counsel for the Collateral Agent and the Committee were present at the Auction in

---

[3] Specifically, the two (2) Qualified Bids for other fixed assets related to "furnishings and equipment."

their role as Consultation Parties, and the Debtor and its advisors engaged in dialogue with the Consultation Parties throughout the Auction.

11. Representatives from the following Qualified Bidders were present at the Auction—Boston Scientific Corporation, Cirtec Medical Corp., Greatbatch Ltd. (a subsidiary of Integer Holdings Corporation), and Insight Institute of Neurosurgery and Neuroscience (a d/b/a of Jawad A. Shah, M.D., P.C.). Tiger Liquidity Services BioPharma Partners (comprised of Tiger Capital Group, LLC and Liquidity Services, Inc.) and Branford Auctions, LLC (who was partnered with Hilco Industrial) also submitted Qualified Bids and were invited to participate by telephone.

12. The Debtor and its advisors selected Cirtec Medical Corp.'s initial Bid of $2 million as the baseline bid. After two rounds of bidding, Cirtec Medical Corp. was determined to be the Successful Bidder with a Successful Bid of $2.3 million.

13. In the Debtor's and its advisors' business judgment, Cirtec Medical Corp. provided the best and highest bid for the Assets. Boston Scientific Corporation was deemed the Backup Bidder, having submitted a Backup Bid valued by the Debtor at $2.2 million.

14. In conjunction with the Successful Bid, the Debtor will seek to assume and assign to Cirtec Medical Corp. the License Agreement with Aleva Neurotherapeutics SA (the "<u>Acquired Contract</u>").

B.  **Approval of the Sale**

15. I have worked as an investment banking restructuring professional for over twenty (20) years and have represented buyers and sellers in numerous auctions similar to the Auction, in addition to more traditional investment banking engagements. In my opinion, the Auction was effective in testing the market value of the Assets, the time period for marketing the Assets was

adequate, and the outcome from the sale process yielded the highest and best market value for the Assets.

16. To my knowledge, the Auction was conducted in a non-collusive, fair, and good-faith manner, and a reasonable opportunity was provided to any interested party to make a higher or otherwise better offer for the Assets. Further, I believe that the sale process maximized the value of the Debtor's estate for the benefit of all stakeholders.

17. After the Auction concluded, Stout reviewed the results with the Debtor's management and representative of the Board of Directors. The results of the Auction and the selection of the Successful Bid and the Backup Bid were discussed and reviewed by the Debtor, Stout and the Debtor's other professionals. In my view, the Sale represents the best possible outcome for the disposition of the Assets and the Debtor exercised sound business judgment in selecting the Successful Bid.

18. Based on my review of Cirtec Medical Corp's Bid qualifications, I believe that Cirtec Medical Corp. has sufficiently demonstrated its financial wherewithal to consummate the sale and provide adequate assurance of future performance of the Acquired Contract.

I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: March 5, 2020         /s/ Michael Krakovsky
                             Michael Krakovsky
                             Managing Director & Head of Special Situations
                             Stout Risius Ross Advisors, LLC