## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In Re: | § | Chapter 11 |
| | § | |
| NUVECTRA CORPORATION,[1] | § | Case No. 19-43090 |
| | § | |
| Debtor. | § | |

### ORDER (I) AUTHORIZING AND APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (II) APPROVING THE ASSET PURCHASE AGREEMENT, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE ACQUIRED CONTRACT, AND (IV) GRANTING RELATED RELIEF

This matter is before the Court on the *Notice of Successful and Backup Bidders With Respect to the Auction of the Debtor's Assets* (the "Sale Motion")[2] [Dkt. No. 233], which was filed by the above-referenced debtor and debtor in possession (the "Debtor"), pursuant to which the Debtor requests entry of an order (the "Order"): (a) authorizing and approving the sale (the "Sale") of the "Purchased Assets" (collectively, the "Assets") under the Agreement (as defined below) free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever (excluding the Assumed Liabilities) pursuant to that certain asset purchase agreement (the "Agreement") dated February 29, 2020, by and among the Debtor (the "Seller") and Cirtec Medical Corp. (together with any of its affiliates that are assignees under the Agreement, the "Purchaser"); (b) approving the Agreement; (c) approving the assumption and assignment of the Acquired

---

[1] The last four digits of the Debtor's federal tax identification number are: 3847. The location of the Debtor's principal place of business and the service address for the Debtor is: 5830 Granite Parkway, Suite 1100, Plano, TX 75024.

[2] All capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the *Order (I) Approving Bid and Auction Procedures, Including Stalking Horse Protections; (II) Authorizing and Scheduling an Auction for the Sale of Assets; (III) Approving the Sale of Assets; and (IV) Granting Related Relief* (the "Bid Procedures Order") [Dkt. No. 169] and the *Expedited Motion for an Order (I) Approving Bid and Auction Procedures, Including Stalking Horse Protections; (II) Authorizing and Scheduling an Auction for the Sale of Assets; (III) Approving the Sale of Assets; and (IV) Granting Related Relief* (the "Bid Procedures Motion") [Dkt. No. 110]. To the extent of any inconsistency, the Order shall govern.

Contract; and (d) granting certain related relief.  This Court finds that it has jurisdiction over this matter pursuant to 28 U. S. C. §§ 157 and 1334; that consideration of the Sale Motion is a core proceeding pursuant to 28 U. S. C. § 157(b); that venue is proper before this Court pursuant to 28 U. S. C. §§ 1408 and 1409; that due and proper notice of the Sale Motion has been provided to the necessary parties; that no other or further notice need be provided; that the relief sought in the Sale Motion is in the best interests of the Debtor, its creditors, and all parties in interest; that the Debtor has established just cause for the relief requested in the Sale Motion; and that, upon all of the proceedings had before the Court (the "Sale Hearing") and after due deliberation and sufficient cause appearing therefore, and for the reasons stated on the record, the Court hereby **FINDS AND DETERMINES THAT:**

I.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief granted herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

II.       This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

### Notice of the Sale

III.      Notice of the Sale was provided to all parties that had been identified by the Debtor in good faith prior to the entry of the Bidding Procedures Order as having the interest and ability

to acquire all or part of the Debtor's assets; (b) all entities known to have asserted any liens, claims, interests, and encumbrances in or upon any of the Debtor's assets; and (c) the U.S. Trustee; provided, however, that to the extent email addresses were available for any of the foregoing parties, such parties were be served by email.

IV.     In addition, Notice of the Sale was provided by first-class mail, postage prepaid or, for those parties who have consented to receive notice by ECF, upon (a) the United States Internal Revenue Service; (b) all parties filing a notice of appearance and requesting service the Chapter 11 Case; (c) all state and local taxing authorities in the states in which the Debtor has tax liabilities; (d) the United States Securities and Exchange Commission; (e) all counterparties to executory contracts and unexpired leases of the Debtor; (f) all state attorneys general in states in which the Debtor conducts business; and (g) all other parties on the Debtor's mailing matrix.

V.     Additionally, the Debtor prepared and filed a Form 8-K (affixing the Bidding Procedures and Bid Procedures Order to the Form 8-K) with the United States Securities Exchange Commission to notify the Debtor's shareholders of the Debtor's sale process.

VI.     Finally, the Debtor published Notice of the Sale in a national publication selected by the Debtor and its advisors and also caused Notice of the Sale to be posted on the Debtor's case information website at www.kccllc.net/nuvectra (the "Case Website").

VII.     Notice of the Sale of the Debtor's assets and the Sale Hearing was reasonably calculated to provide all interested parties with timely and proper notice of the Sale and Sale Hearing.

VIII.     As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate and sufficient notice of the Sale Hearing, Sale and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Acquired Contract to

the Purchaser, was provided in accordance with the orders previously entered by this Court, sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The notices described herein were good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Sale Hearing, Sale or the assumption and assignment of the Acquired Contract to the Purchaser is or shall be required.

IX.     The disclosures made by the Debtor concerning the Agreement, Sale Motion, Sale, assumption and assignment of the Acquired Contract to the Purchaser and Sale Hearing were good, complete and adequate.

X.      A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein (including the assumption and assignment of the Acquired Contract to the Purchaser and any Cure Costs related thereto), has been afforded to all interested persons and entities.

**Good Faith of Purchaser**

XI.     The Agreement was negotiated, proposed and entered into by the Seller and the Purchaser without collusion, in good faith and from arms'-length bargaining positions.

XII.    The Purchaser is not an "insider" or "affiliate" of the Debtor as those terms are defined in the Bankruptcy Code. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person, and the aggregate price paid by the Purchaser for the Assets (the "Purchase Price") was not controlled by any agreement among the bidders.

XIII.   The Purchaser is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and accordingly, the reversal or

modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal. The Purchaser proceeded in good faith in connection with all aspects of the Sale, including: (i) complying in all respects with the Bid Procedures Order; (ii) agreeing to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; and (iii) disclosing all payments to be made by the Purchaser in connection with the Sale. Accordingly, the Purchaser is entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

XIV.    With respect to any discussions or agreements entered into between the Purchaser and the Debtor's management or key personnel regarding compensation or future employment, the Purchaser has disclosed the material terms of any such agreements and the measures taken to ensure the fairness of the Sale in light of any such agreements.

**Highest or Otherwise Best Offer**

XV.    The Auction was conducted on February 27, 2020. The Purchaser submitted the highest and best offer for the Assets. The Bidding Procedures obtained the highest value for the Assets for the Debtor and its estate. No other entity or group of entities has offered to purchase the Assets for greater economic value to the Debtor's estate than the Purchaser. The Debtor's determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment.

**No Fraudulent Transfer**

XVI.   The consideration provided by the Purchaser pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Assets, (iii) will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative and (iv)

constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. No other person, entity or group of entities has offered to purchase the Assets for greater economic value to the Debtor's estate than the Purchaser. The Debtor's determination that the Agreement constitutes the highest or otherwise best offer for the Assets constitutes a valid and sound exercise of the Debtor's business judgment. Approval of the Sale Motion and the Agreement, and the consummation of the transactions contemplated thereby, is in the best interests of the Debtor, its estate, creditors and other parties-in-interest.

XVII. The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtor.

**Validity of Transfer**

XVIII. The Debtor has (i) full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Agreement and (iii) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate the Sale, Agreement or transactions contemplated thereby.

XIX.   The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.   Neither the Debtor nor the Purchaser are fraudulently entering into the transaction contemplated by the Agreement.

XX.   The Debtor has good and marketable title to the Assets and are lawful owners of the Assets.   Except as otherwise provided in this Order, pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Assets to the Purchaser will be, as of the closing of the transactions contemplated by the Agreement (the "Closing Date"), a legal, valid and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Seller to the Assets free and clear of (i) all liens, claims and encumbrances (including any right of first offer or refusal regarding or option to purchase any real property) relating to, accruing or arising any time prior to the Closing Date (collectively, the "Liens") and (ii) all debts arising under, relating to or in connection with any act of the Debtor or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims (defined below) and Liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, the Debtor's or the Purchaser's interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of

any attributes of ownership) (collectively, as defined in this clause (ii), the "Claims"), relating to, accruing or arising any time prior to the Closing Date, with the exception of Assumed Liabilities or as expressly provided in this Order.

### Section 363(f) is Satisfied

XXI.   The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtor may sell the Assets free and clear of any interest in the Assets.

XXII. The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the Sale and the assumption of liabilities and obligations as set forth in the Agreement by the Purchaser were not free and clear of all Liens, Claims and (except as otherwise provided in this Order) other interests of any kind or nature whatsoever (other than the Assumed Liabilities).   Unless otherwise expressly included in the Assumed Liabilities, the Purchaser shall not be responsible for any Liens or Claims, including in respect of the following: (i) any labor or employment agreements; (ii) all mortgages, deeds of trust and security interests; (iii) any pension, health or welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtor to which the Debtor has at any time contributed to or had any liability or potential liability; (iv) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985,

as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "COBRA"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtor or any of its predecessors; (v) Claims or Liens arising under any Environmental Laws with respect to any assets owned or operated by the Debtor or any corporate predecessor of the Debtor at any time prior to the Closing Date and any of the Debtor's liabilities other than the Assumed Liabilities; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (ix) any Excluded Liabilities.

XXIII. Not selling the Assets free and clear of all Liens, Claims and other interests of any kind or nature whatsoever against the Debtor (except the Assumed Liabilities and except as otherwise provided in this Order) would adversely impact the Debtor's estate, and the sale of the Assets other than one free and clear of all Liens, Claims and other interests of any kind or nature whatsoever against the Debtor (except the Assumed Liabilities and except as otherwise provided in this Order) would be of substantially less value to the Debtor's estate.

XXIV. The Debtor may sell the Assets free and clear of all Liens, Claims and other interests of any kind or nature whatsoever against the Debtor, its estate or any of the Assets (except the Assumed Liabilities and as otherwise provided in this Order) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtor, its estate or any of the Assets who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

**Compelling Circumstances for an Immediate Sale**

XXV.  Good and sufficient reasons for approval of the Agreement and the Sale have been articulated.  The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest.  The Debtor has demonstrated (i) good, sufficient and sound business purposes and justifications for approving the Agreement and (ii) compelling circumstances for the Sale outside of (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code and (b) a plan of reorganization or liquidation, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtor's estate and the Sale will provide the means for the Debtor to maximize distributions to its creditors.

XXVI. The adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

XXVII.       The Sale does not constitute a sub rosa chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates a liquidating plan of reorganization for the Debtor.

XXVIII.       The Debtor, in connection with offering products or services, did not disclose any policy prohibiting the transfer of personally identifiable information and, therefore, the sale of the Assets may be approved pursuant to section 363(b)(1)(A) of the Bankruptcy Code without the appointment of a consumer privacy ombudsman as defined in Bankruptcy Code section 363(b)(1).

XXIX. The consummation of the Sale and the assumption and assignment of the Acquired Contract is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 thereof.

### Adequate Assurance of Future Performance

XXX.  The Purchaser has demonstrated adequate assurance of future performance with respect to the Acquired Contract pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.      The relief requested in the Sale Motion, including the Sale, is granted and approved to the extent set forth in this Order.

2.      Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise (except the reservations of right expressly preserved in this Order and on the record), are hereby denied and overruled with prejudice.  Those parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

### Approval of the Agreement

3.      The Agreement as modified by this Order and all of the terms and conditions thereof is hereby approved.

4.      The sale of the Assets and the consideration provided by the Purchaser under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for

reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

5.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement, (ii) close the Sale as contemplated in the Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement and fully close the Agreement, including the assumption and assignment of the Acquired Contract to the Purchaser, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale.  The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

6.      This Order shall be binding in all respects upon (a) the Debtor, (b) its estate, (c) all creditors of, and holders of equity interests in, the Debtor, (d) all holders of Liens, Claims or other interests (whether known or unknown) in, against or on all or any portion of the Assets, (e) the Purchaser and all successors and assigns of the Purchaser, (f) the Assets and (g) any trustee, if any, subsequently appointed in the Debtor's chapter 11 case or upon a conversion of the case to a case under chapter 7 under the Bankruptcy Code.  This Order and the Agreement shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

**Transfer of Assets**

7.       Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Assets to the Purchaser on the Closing Date and such transfer shall (a) constitute a legal, valid, binding and effective transfer of the Assets, (b) vest the Purchaser with title to the Assets and (c) upon the Debtor's receipt of the Purchase Price, be free and clear of all Liens, Claims and other interests of any kind or nature whatsoever (other than Assumed Liabilities and except as otherwise provided in this Order), including but not limited to, successor or successor-in-interest liability and Claims, with such Liens, including mechanics, materialmen and subcontractor Liens and rights to receive payment of trust funds, Claims and other interests to attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Assets.  Upon the closing of the Sale (the "Closing"), the Purchaser shall take title to and possession of the Assets subject only to the Assumed Liabilities and except as otherwise provided in this Order.

8.       Except with respect to Assumed Liabilities, all persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to the Purchaser or its assignee at the Closing.  The provisions of this Order authorizing the sale of the Assets free and clear of Liens, Claims and other interests of any kind or nature whatsoever (other than Assumed Liabilities and except as otherwise provided in this Order) shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

9.      The Debtor is hereby authorized to take any and all actions necessary to consummate the Agreement, including any actions that otherwise would require further approval by shareholders or the Debtor's board of directors without the need of obtaining such approvals.

10.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except with respect to Assumed Liabilities.

11.     If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Assets (other than statements or documents with respect to any Assumed Liabilities or license agreements as set forth in this Order) shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all liens or interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtor is hereby authorized and directed, and the Purchaser is hereby authorized, on behalf of the Debtor and each of the Debtor's creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.

12.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Seller's interests in the Assets.  This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims and other interests of any kind or nature whatsoever existing as to the Assets prior to the Closing Date, other than Assumed Liabilities or as otherwise provided in this Order, shall have been unconditionally released, discharged and terminated, and that the

14

conveyances described herein have been effected; provided, that such Liens, Claims and other interests shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Assets.  This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

13.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any (i) federal, state, or local governmental or regulatory license, permit, registration, and (ii) governmental authorization or approval of the Debtor with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing Date.

14.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of the Debtor's chapter 11 case or the consummation of the transactions contemplated by the Agreement.  Each and every federal, state, and local governmental agency or department is hereby authorized to

accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

**Prohibition of Actions Against the Purchaser**

15.    Except for the Assumed Liabilities, or as otherwise expressly provided for in this Order or the Agreement, the Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Assets, and the Purchaser is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtor and/or its estate under any theory of law or equity.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agreement, the Purchaser shall not be liable for any Claims against the Debtor or any of its respective predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, successor or successor employer liability (including any obligations pursuant to COBRA) with respect to any employee benefit plan as defined in Section 3(3) of ERISA, de facto merger or joint venture, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, liabilities relating to or arising from any environmental laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.

16.    Except for the Assumed Liabilities, or as otherwise expressly provided for in this Order or the Agreement, all persons and entities, including, but not limited to, all debt security

holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of its affiliates, any of the foregoing's successors, assigns, assets or properties or the Assets, such persons' or entities' Liens, Claims or interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Purchaser, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (c) creating, perfecting or enforcing any Lien or other Claim against the Purchaser, any of its affiliates or any of the foregoing's successors, assigns, assets or properties; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser, any of its affiliates or any of the foregoing's successors or assigns; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order, other orders of the Court or the Agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

17.    On the Closing Date, or as soon as possible thereafter, each creditor is authorized and directed, and the Purchaser is hereby authorized, on behalf of each of the Debtor's creditors, to execute such documents and take all other actions as may be necessary to release Liens, Claims and other interests in or on the Assets (except Assumed Liabilities or as otherwise provided in this Order), if any, as provided for herein, as such Liens, Claims and interests may have been recorded or may otherwise exist.

18.    The Debtor is authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtor may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the applicable business corporation, trust and other laws of the applicable governmental units, including for the change of the Debtor's corporate name, with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

19.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Assets to the Purchaser in accordance with the terms of the Agreement and this Order.

20.     The Purchaser has given substantial consideration under the Agreement for the benefit of the Debtor, its estate and creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to the Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against, interests in or Claims against the Debtor or any of the Assets other than holders of Liens or Claims relating to Assumed Liabilities or as otherwise provided in this Order.  The consideration provided by the Purchaser for the Assets under the Agreement is fair and reasonable and accordingly the purchase may not be avoided under section 363(n) of the Bankruptcy Code.

21.     Effective as of the Closing, the Purchaser, its successors and assigns, shall be designated and appointed the Debtor's true and lawful attorney and attorneys, with full power of substitution, in the Debtor's name and stead, on behalf of and for the benefit of the Purchaser, its successors and assigns, for any purpose as provided in the Agreement as amended by this Order, including for the following purposes:  to demand and receive any and all of the Assets and to give receipts and releases for and in respect of the Assets, or any part thereof, and from time to time to institute and prosecute in the Debtor's name, for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Purchaser, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Assets, and to do all acts and things with respect to the Assets which the Purchaser, its successors and assigns, shall deem desirable.  The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtor.

**Assumption and Assignment of Acquired Contract**

22.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Sale, the applicable Debtor's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Agreement as modified by this Order, of the Acquired Contract listed on Schedule 1.6(a) of the Agreement is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

23.    The Debtor is hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing Date, the Acquired Contract free and clear of all Claims, Liens or other interests of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Acquired Contract to the Purchaser.

24.    The Acquired Contract shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in the Acquired Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Acquired Contract after such assignment to and assumption by the Purchaser, except as provided in the Agreement.

25.    Nothing in this Order or the Agreement releases the Purchaser from compliance with any applicable license, permit, registration, authorization, or approval, in each case, of or with respect to a governmental unit.  The Purchaser shall continue to honor and comply with the terms and requirements of any such applicable license, permit, registration, authorization, or approval.

26.     All defaults or other obligations of the Debtor under the Acquired Contract arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured pursuant to the terms of the Agreement on the Closing Date or as soon thereafter as reasonably practicable.  For the avoidance of doubt, no obligations arising from the Acquired Contract after the date of this Order but prior to the Closing Date shall be deemed Assumed Liabilities unless otherwise provided in the Agreement.

27.     Subject to approval by the Debtor, the Purchaser is authorized, without need for further relief from this Court, to add additional Acquired Contracts (each, an "Additional Acquired Contract") to Schedule 1.6(a) until five (5) days before the Closing Date.  Upon the addition of an Additional Acquired Contract, Purchaser shall serve a written notice in form and substance reasonably acceptable to the Debtor, to each non-debtor counterparty, and its counsel if they have appeared in this case to the Additional Acquired Contract listing the Additional Acquired Contract(s) to be assumed and assigned pursuant to the terms of the Agreement, and any outstanding Cure Costs or obligations.

28.     If a counter-party wishes to object to the assumption and assignment of an Additional Acquired Contract, including for but not limited to, (a) the ability of the Debtor to provide adequate assurance of future performance, or (b) the Debtor's calculation of the outstanding Cure Costs, it must file a written objection that lists each Additional Acquired Contract whose assumption and assignment is being objected to, and sets forth in detail the basis for such objection together with all supporting documentation, so as to be actually received no later than two (2) days before the Closing Date.  Service of the objection to the proposed assumption and assignment may be by electronic mail.

29.    Notwithstanding the foregoing, with respect to objections to any Cure Costs that remain unresolved as of the Sale Hearing, such objections shall be resolved by a future Court hearing to be set at the request of the Debtor, the Purchaser and/or the respective counterparty, provided that, the Purchaser may remove the Acquired Contract in its sole discretion within 10 days of any Court resolution regarding disputed Cure Amounts.

30.    Nothing in this Order, the Sale Motion or in any notice or any other document is or shall be deemed an admission by the Debtor that any contract is an executory contract and/or unexpired lease or must be assumed and assigned pursuant to the Agreement or in order to consummate the Sale.

31.    The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of the Acquired Contract shall not be a waiver of such term(s) or condition(s) or of the Debtor's and Purchaser's rights to enforce every term and condition of such Acquired Contract.

32.    All parties to the Acquired Contract are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach, Claim, pecuniary loss or condition to assignment arising under or related to the Acquired Contract existing as of the Closing Date or arising by reason of the Closing, except for any amounts that are Assumed Liabilities or as otherwise provided in this Order.

**Other Provisions**

33.    This Order and the Agreement shall be binding in all respects upon all creditors and equity-holders of the Debtor, all non-debtor parties to the Acquired Contract, all successors and assigns of the Debtor and any of its respective affiliates and subsidiaries and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtor's bankruptcy case or upon a conversion of such cases to cases under chapter 7 of the Bankruptcy Code in accordance

with the Bankruptcy Code and other applicable law.  The Agreement shall not be subject to rejection or avoidance under any circumstances.

34.     The Agreement may be modified, amended, or supplemented by the parties thereto in a writing signed by the parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

35.     The Debtor and Greatbatch Ltd. ("Greatbatch") are parties to the Restricted License Agreement, dated as of March 14, 2016 (the "Restricted License Agreement") and the Unrestricted License Agreement, dated as of March 14, 2016 (the "Unrestricted License Agreement" and together with the Restricted License Agreement, the "License Agreements").  Greatbatch has elected pursuant to section 365(n)(1)(B) of the Bankruptcy Code to retain its rights under the License Agreements.  Nothing in this Order shall impair, or shall be construed to impair, Greatbatch's rights as licensee under the License Agreements.  Notwithstanding anything to the contrary in this Order, Purchaser's purchase of the Assets shall not be free and clear of Greatbatch's rights under section 365(n)(1)(B) of the Bankruptcy Code.

36.     Except to the extent expressly included in the Assumed Liabilities, the Purchaser and its affiliates shall have no liability, obligation or responsibility under the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment or Environmental Law by virtue of the Purchaser's purchase of the Assets or assumption of the Assumed Liabilities.

37.     The consideration provided by the Purchaser to the Debtor pursuant to the Agreement for the Assets constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

38.     Except for the Assumed Liabilities, or as otherwise expressly provided for in this Order or the Agreement, the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtor and/or its estate, including, but not limited to, any bulk sales or similar law, successor liability, antitrust law, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter raised, which may be asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor, or any of its predecessors or affiliates or any obligations of the Debtor or its predecessors or affiliates arising prior to the Closing Date, for any liabilities, debts, commitments or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed or otherwise) in any way whatsoever relating to or arising from the Assets or the Debtor's operation of its business or use of the Assets on or prior to the Closing Date including, but not limited to, any liabilities, debts, commitments or obligations arising on or prior to the Closing and under or in connection with:  (a) any employment or labor agreements (including any collective bargaining agreements), consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtor is a party; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtor; (c) the cessation of the Debtor's operations, dismissal of employees or termination (including rejection) of employment or labor agreements (including any collective bargaining agreements) or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to applicable law; (d) workmen's

compensation, occupational disease or unemployment or temporary disability insurance claims; (e) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing; (f) any liabilities, debts, commitments or obligations of, or required to be paid by, the Debtor for any taxes of any kind for any period; (g) any liabilities, debts, commitments or obligations for any taxes relating to the business of the Debtor or the Assets for or applicable to the pre-closing period; (h) any litigation; (i) any products liability, other tort or similar claims, whether pursuant to any state or any federal law; and (j) any excluded liabilities, if any, in the Agreement. The Purchaser has given substantial consideration under the Agreement for the benefit of the holders of any Liens. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in the Debtor or any of the Assets.

39.     Nothing in this Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order, and the Purchaser reserves all rights and defenses other than asserting that it is free of such liability on account of this Order with respect to any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to impose liability on the Purchaser for penalties or other costs for days of violation prior to entry of this Order under environmental laws or regulations or otherwise or shall constitute an admission of liability by the Purchaser under environmental laws or regulations.

40.     The transactions contemplated by the Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

41.     In accordance with the Bid Procedures Order, the Purchaser is the Successful Bidder and Boston Scientific Corporation ("Boston Scientific") submitted the Backup Bid.  In the event that the Purchaser fails to close pursuant to the Agreement, Boston Scientific will be authorized to close pursuant to its Backup Bid and all references in the Order to "purchaser" shall be deemed to apply to Boston Scientific, including, but not limited to, any good faith purchaser findings.

42.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) the chapter 11 case, (b) any subsequent chapter 7 case into which the chapter 11 case may be converted or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Agreement (as modified by this Order) or the terms of this Order.

43.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

44.     The failure to specifically include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety; provided, however, that this

Order shall govern if there is any inconsistency between the Agreement (including all ancillary Agreements) and this Order.  Likewise, all of the provisions of this Order are non-severable and mutually dependent.

45.     Nothing contained herein shall constitute a transfer of ownership with respect to personal property owned by Greatbatch.

46.     Exhibit "A" hereto contains a list of assets that are property of Integer or Greatbatch and shall not be transferred to Purchaser pursuant to this Order or the Agreement.  With respect to any test stations or servers set forth on the attached Exhibit "A," upon prior written notice to Greatbatch, the Purchaser shall be permitted reasonable access to review (both onsite and remotely) such test stations and servers to confirm whether any data, intellectual property (including, but not limited to, algorithms, formulae, blue prints, designs, processes, methods, and trade secrets), confidential or proprietary information, software (including source code, object code and any applicable documentation), or design history files included in the Purchased Assets (the "Purchased IP") are stored or located therein.  To the extent any Purchased IP is stored or located in such test stations or servers, (i) the Purchaser shall, prior to the Debtor vacating the premises subject to the Sublease, be permitted to make a copy of such Purchased IP in a form and format of the Purchaser's choosing, and (ii) after such copy has been made, Purchaser, at its own cost, shall as promptly as reasonably practicable irreversibly delete all copies of the Purchased IP located or stored on such test stations or servers, and shall certify such deletion in writing to the Purchaser.  Greatbatch shall reasonably assist the Purchaser in connection with the foregoing. Prior to Purchaser removing Purchased Assets from the premises subject to the Sublease, representatives from the Debtor, Greatbatch and Purchaser shall conduct a walk-through of the premises and identify the Purchased Assets to be removed.

47.     IPG Test System "No. 161346 SCS IPG Electrical Test System (003 – CLAUDE)"
is included in the Purchased Assets and located in Integer's Plymouth, Minnesota facility
Purchaser shall be responsible for the costs to disconnect utilities, rigging and freight to remove
the asset from Integer's facility.

48.     The Court shall retain jurisdiction to, among other things, interpret, implement, and
enforce the terms and provisions of this Order and the Agreement, all amendments thereto and any
waivers and consents thereunder and each of the agreements executed in connection therewith to
which the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to
adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale,
including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the
Purchaser, (b) interpret, implement and enforce the provisions of this Order, (c) protect the
Purchaser against any Liens, Claims or other interest in or against the Debtor or the Assets of any
kind or nature whatsoever attaching to the proceeds of the Sale and (d) enter any orders under
section 363 or 365 of the Bankruptcy Code with respect to the Acquired Contract.

49.     Any amounts payable by the Debtor under the Agreement, the Bid Procedures
Order or any of the documents delivered by the Debtor in connection with the Agreement or the
Bid Procedures Order shall be paid in the manner provided in the Agreement or the Bid Procedures
Order, without further order of this Court, shall be allowed administrative claims in an amount
equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code,
shall have the other protections provided in the Bid Procedures Order, and shall not be discharged,
modified or otherwise affected by any reorganization or liquidating plan for the Debtor, except by
an express written agreement of the Purchaser or its successors or assigns.  For purposes of

clarification, this Order authorizes payment of claims by the Debtor only as expressly set forth in this Order, under the Agreement, or under the Bid Procedures Order.

50.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

51.     This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6004(h), 6006(d), 7062, 9014 or otherwise.  The Debtor and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

52.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in the chapter 11 case, the terms of this Order shall govern.

Signed on 03/09/2020

*Brenda T. Rhoades*                    SD

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

FUNCTIONAL CURRENCY: USD
PERIOD ENDING: JANUARY 31, 2020

NUVECTRA OFFICE SPACE PROJECT

| LOCATION DESCRIPTION | ASSET ACCT | EXP ACCT | CC | ASSET # | ACQ DATE | DESCRIPTION | PO # | QUANTITY | DEPR METH | EST LIFE | ASSET CATEGORY | MIN CAT | ASSET KEY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| USA-TX-PLANO-NONE | 12301 | 53055 | 1AZ2 | 228466 | 01/15/16 | NUVECTRA OFFICE SPACE – LEASEHOLD BUILDOUT CONSTRUCTION | 20243226 | 4 | STL | 120 | LHLD IMP | PLANO | 3566-1567 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 228473 | 01/15/16 | TEKNION ALTOS WALL SYSTEMS–ELT AREA | 20242884 | 3 | STL | 120 | F&F | NONE | 3566-1568 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 228473 | 01/15/16 | TEKNION ALTOS WALL SYSTEMS– MANAGEMENT AREA | 20242884 | 21 | STL | 120 | F&F | NONE | 3566-1569 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 228473 | 01/15/16 | BREAKROOM/CAFETERIA FURNITURE – TABLES/CHAIRS | 20248449 | 1 | STL | 120 | F&F | NONE | 3566-1570 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 228473 | 01/15/16 | ELT OFFICE FURNITURE - 4 OFFICES | 20242891 | 4 | STL | 120 | F&F | NONE | 3566-1571 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 228473 | 01/15/16 | MANAGEMENT OFFICE FURNITURE - 21 OFFICES | 20242891 | 21 | STL | 120 | F&F | NONE | 3566-1572 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 228473 | 01/15/16 | CUBICLES | 20242885 | 60 | STL | 120 | F&F | NONE | 3566-1573 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 228473 | 01/15/16 | TEAM WORK AREAS | 20244335 | 2 | STL | 120 | F&F | NONE | 3566-1574 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 228474 | 01/15/16 | BOARD ROOM FURNITURE | 20244335 | 1 | STL | 120 | F&F | NONE | 3566-1575 |
| USA-TX-PLANO-NONE | 12502 | 53081 | 1AZ2 | 228474 | 01/15/16 | HP DL380 GEN9 E5-2670V3 PRF 64GB SERVERS | 20243543 | 2 | STL | 60 | TELECOMM | NONE | 3566-1576 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228475 | 01/15/16 | VERITAS NETBACKUP BACKUP APPLIANCE | 20243814 | 1 | STL | 60 | TELECOMM | NONE | 3566-1577 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228475 | 01/15/16 | SOLARWINDS LICENSING UPGRADE | 20248523 | 1 | STL | 60 | TELECOMM | NONE | 3566-1578 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228475 | 01/15/16 | APC SMART UPS | 20244444 | 2 | STL | 60 | TELECOMM | NONE | 3566-1579 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | NETWORK CABLING | 20246665 | 1 | STL | 60 | TELECOMM | NONE | 3566-1580 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | SAN (VNX 5200 10 TB) STORAGE | 20243542 | 1 | STL | 60 | TELECOMM | NONE | 3566-1581 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | CISCO COMPATIBLE 10GBASE-SR SFP+ MODULE/TRANSCEIVER | 20244341 | 1 | STL | 60 | TELECOMM | NONE | 3566-1582 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | APC SWITCHED RACK AND ACCESSORIES | 20243841 | 4 | STL | 60 | TELECOMM | NONE | 3566-1583 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | CISCO ISR 4451 (4GE,3NM,2SM,8G FLASH,4G DRAM | 20243911 | 2 | STL | 60 | TELECOMM | NONE | 3566-1584 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | SNTC-24X7X4 CISCO ISR4451 (4GE,3 | 20243911 | 2 | STL | 60 | TELECOMM | NONE | 3566-1585 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | WIDE AREA VIRTUALIZATION ENGINE 694 | 20243911 | 1 | STL | 60 | TELECOMM | NONE | 3566-1586 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | CISCO CATALYST 3650 48 PORT DATA 4X10G UPLINK IP BASE | 20243911 | 2 | STL | 60 | TELECOMM | NONE | 3566-1587 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | CATALYST 2960-X 48 GIGE POE 740W 4 X 1G SFP, LAN BASE | 20243911 | 6 | STL | 60 | TELECOMM | NONE | 3566-1588 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | CATALYST 2960-X 48 GIGE POE 740W 2 X 10G SFP+, LAN BASE | 20243911 | 2 | STL | 60 | TELECOMM | NONE | 3566-1589 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | ACCESS POINTS | 20248856 | 18 | STL | 60 | TELECOMM | NONE | 3566-1590 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228476 | 01/15/16 | NEW-CUWL STANDARD EDITION 10 X USER PHONES | 20243844 | 50 | STL | 60 | TELECOMM | NONE | 3566-1591 |
| USA-TX-PLANO-NONE | 12502 | 53086 | 1AZ2 | 228477 | 01/15/16 | CISCO UC PHONE 7841 | 20243844 | 45 | STL | 60 | TELECOMM | NONE | 3566-1592 |
| USA-TX-PLANO-NONE | 12601 | 53081 | 1AZ2 | 240380 | 08/01/16 | CONFERENCE ROOM FURNITURE - 5 ROOMS | 20252288 | 5 | STL | 120 | F&F | NONE | 3566-1593 |

**Test Stands**

| No. | Description | Location |
|---|---|---|
| 14-00117 | IPG In-Process ETS V – Daniel, Station 5 | Plymouth |
| 15-00311 | IPG In – Process ETS XV – Francis, Station 15 | Plymouth |
| 14-00116 | IPG Device ETS VI – Edwin, Station 6 | Plymouth |
| 15-00312 | IPG Device ETS XVI – Grace, Station 16 | Plymouth |